MADISON DISTRICT PUBLIC SCHOOLS v MYERS

Docket No. 219872. Submitted March 14, 2001, at Detroit. Decided September 25, 2001, at 9:15 A.M.

> Madison District Public Schools brought an action in the Oakland Circuit Court against Jack D. Myers, alleging fraud, breach of fiduciary duty, and fraudulent concealment concerning payments by the plaintiff to the defendant under a severance agreement that included release and arbitration clauses. The defendant filed an answer that included the arbitration clause among its affirmative defenses. The defendant also counterclaimed breach of contract, mutual mistake, and promissory estoppel. The plaintiff did not raise the arbitration clause in its answer to the counterclaim. The defendant moved for summary disposition of the plaintiff's action on the basis of the release clause in the severance agreement. The court, Denise Langford Morris, J., granted the motion. The plaintiff filed for arbitration. The defendant moved in the trial court for a stay of arbitration proceedings. The court denied the defendant's motion and ordered arbitration of "all contract issues including those contained in the Counter-Complaint," determining that the plaintiff's conduct of litigation was consistent with the right to arbitrate and that the defendant would suffer no prejudice resulting from arbitration proceedings because the grant of summary disposition of the plaintiff's action was not a decision on the merits. The defendant appealed. The trial court stayed arbitration proceedings pending the defendant's appeal.
>
> The Court of Appeals *held*:
>
> A party arguing that there has been a waiver of a contractual right to arbitration bears a heavy burden of proof and must demonstrate knowledge of an existing right to compel arbitration, acts inconsistent with the right to arbitrate, and prejudice resulting from the inconsistent acts. In this case, the defendant met his burden of proving that the plaintiff had waived arbitration.
>
> 1. The existence of an arbitration agreement and the enforceability of its terms is a judicial question that cannot be decided by an arbitrator. Here, although the plaintiff's complaint alleged fraud by the defendant that could serve to invalidate the severance agreement, including the arbitration clause, the plaintiff, in the proceed-

ings in the trial court, did not challenge the validity of the severance agreement in seeking reimbursement for alleged overpayments to the defendant. The plaintiff's overpayment claims fell within the broad scope of the arbitration provisions of the severance agreement concerning "[a]ny dispute, or any action to enforce the [agreement's] terms and conditions" and were therefore not exempt from arbitration. In the 1½ year period between the plaintiff's filing of its action and its demand for arbitration, the plaintiff committed acts inconsistent with its claimed right to arbitration by failing to raise arbitration as an affirmative defense to the defendant's counterclaim, by exchanging exhibits and witness lists and amending its witness list, by filing forty-five requests for admission and "Genuiness of Documents," by filing a motion and supporting brief to compel additional responses by the defendant to requests for admission, by participating in mediation and facilitation, and by participating in the deposition of eight witnesses.

2. The plaintiff knew of the arbitration clause in the severance agreement, which was drafted by the plaintiff's attorney.

3. The trial court's grant of summary disposition of the plaintiff's action on the basis of the release clause in the severance agreement was a decision on the merits. The defendant would suffer prejudice if arbitration were to now proceed.

Reversed and remanded.

1. ARBITRATION — WAIVER — LEGAL QUESTION — APPEAL.

The right to arbitration may be waived by certain conduct, with each case decided on the basis of its particular facts and circumstances; on appeal, a trial court's determination of whether relevant circumstances established a waiver of the right to arbitration is reviewed de novo and the trial court's factual determinations regarding the applicable circumstances are reviewed for clear error (MCR 2.613[C]).

2. ARBITRATION — WAIVER.

Waiver of a contractual right of arbitration is disfavored; a party arguing that there has been a waiver bears the burden of proving knowledge of an existing right to compel arbitration, acts inconsistent with the right to arbitrate, and prejudice resulting from the inconsistent acts.

3. ARBITRATION — AGREEMENTS — LEGAL QUESTION.

The existence of a contract to arbitrate and the enforceability of its terms is a judicial question that cannot be decided by an arbitrator.

4. ARBITRATION — ARBITRABILITY OF ISSUES.
A court, when ascertaining the arbitrability of an issue, considers whether there is an arbitration provision in the parties' contract, whether the disputed issue is arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract.

5. MOTIONS AND ORDERS — SUMMARY DISPOSITION — RELEASES.
A dismissal of an action upon a motion for summary disposition based on a release constitutes a decision on the merits (MCR 2.116[C][7]).

*Pollard & Albertson, P.C.* (by *Dennis R. Pollard* and *William H. Hackel, III*), for the plaintiff.

*Robert Harrison & Associates* (by *Robert S. Harrison* and *Michael J. Rex*), for the defendant.

Before: GAGE, P.J., and CAVANAGH and WILDER, JJ.

GAGE, P.J. Plaintiff brought this action claiming fraud, breach of fiduciary duty, and fraudulent concealment in connection with a severance agreement that provided defendant, plaintiff's former superintendent of schools, various retirement benefits. Defendant filed a counterclaim alleging breach of contract, mutual mistake, and promissory estoppel. Defendant now appeals as of right the trial court's order granting plaintiff's motion to compel arbitration of all contract issues, including defendant's counterclaim. We reverse and remand.

I

On January 31, 1996, defendant gave plaintiff's board of education a proposed agreement describing various terms and benefits that defendant hoped to receive on resigning as plaintiff's superintendent. The benefits included conversion of defendant's unused sick leave into vacation days, and monetary reim-

bursement for the unused vacation days. Defendant's proposal also contained mutual release and arbitration provisions. On February 1, 1996, the board of education accepted the terms of defendant's proposal.

In September 1996, plaintiff sued defendant, challenging his entitlement to the benefits contained in the severance agreement on the basis that during his employment defendant received and failed to reimburse plaintiff for cash advances exceeding $30,000. Defendant raised affirmative defenses, including the arbitration clause of the severance agreement, and filed his countercomplaint. In answering the countercomplaint, plaintiff neglected to mention the arbitration clause.

In January 1998, defendant moved for summary disposition of plaintiff's complaint under MCR 2.116(C)(7) on the basis that the release provision of the severance agreement barred plaintiff's claims. In May 1998, the trial court granted defendant's motion, finding that the broad language of the release provision encompassing "any and all claims, whether known or unknown" precluded any claim regarding the severance agreement "save actual enforcement of the terms of the agreement." The court further found that because (1) plaintiff's claim sought "to enforce rights contrary to the settlement and release" and (2) plaintiff failed to tender back to defendant the consideration he provided for the severance agreement, the release was valid and precluded plaintiff's claims.

In June 1998, plaintiff filed with the American Arbitration Association a demand for arbitration regarding "[r]eimbursement of benefits" contained within the severance agreement. Defendant moved in the trial court to stay any arbitration proceedings, arguing that plaintiff was seeking "to arbitrate the exact same

claims that were dismissed by this Court's order of Summary Disposition," and that plaintiff waived any right to arbitration "by filing its cause of action in the Circuit Court and actively litigating the claims for over a year and a half." Plaintiff responded that it had not acted inconsistently with its right to arbitration by initially seeking judicial resolution of nonarbitrable claims regarding the validity of the severance agreement. According to plaintiff, it properly challenged the validity of the severance agreement in the circuit court before seeking arbitration to enforce the provision of the agreement. Plaintiff further averred that defendant had made no showing that plaintiff's allegedly untimely invocation of arbitration prejudiced him.

On May 7, 1999, the trial court denied defendant's motion to quash the arbitration proceedings and ordered arbitration regarding "all contract issues including those contained in the Counter-Complaint." The court explained merely that "Plaintiff's prior conduct of litigation was not inconsistent with the right to arbitrate," and that defendant would suffer no prejudice resulting from arbitration proceedings "because the grant of Summary Disposition [of plaintiff's complaint] pursuant to MCR 2.116(C)(7) was not a decision on the merits." The court subsequently granted defendant's motion to stay arbitration proceedings pending appeal.

II

A

Defendant contends that the trial court erred in concluding that plaintiff did not waive its right to

demand arbitration. Whether one has waived his right to arbitration depends on the particular facts and circumstances of each case. *Hendrickson v Moghissi*, 158 Mich App 290, 299-300; 404 NW2d 728 (1987). We review de novo the question of law whether the relevant circumstances establish a waiver of the right to arbitration, *North West Michigan Const, Inc v Stroud*, 185 Mich App 649, 650-652; 462 NW2d 804 (1990), and we review for clear error the trial court's factual determinations regarding the applicable circumstances. MCR 2.613(C).

Waiver of a contractual right to arbitrate is disfavored. *Salesin v State Farm Fire & Casualty Co*, 229 Mich App 346, 356; 581 NW2d 781 (1998). The "party arguing there has been a waiver of this right bears a heavy burden of proof" and "must demonstrate knowledge of an existing right to compel arbitration, acts inconsistent with the right to arbitrate, and prejudice resulting from the inconsistent acts." *Id.*, quoting *Burns v Olde Discount Corp*, 212 Mich App 576, 582; 538 NW2d 686 (1995).[1] This Court has noted the following guidance with respect to what

---

[1] Defendant disputes the propriety of requiring a showing of prejudice to establish a waiver of arbitration. Defendant correctly asserts that unlike this case, *Burns, supra* at 580-582, involved the federal arbitration act. In light of the reference to Michigan law in the instant agreement and its provision for enforcement of the arbitrator's decision in the Oakland Circuit Court, this case involves Michigan statutory arbitration. MCL 600.5001; MCR 3.602; *Hetrick v David A Friedman, DPM, PC*, 237 Mich App 264, 268; 602 NW2d 603 (1999). Defendant ignores, however, that *Salesin* did not involve federal arbitration, but nonetheless incorporated into its waiver analysis the federal prejudice requirement. To the extent that defendant challenges the soundness of the *Salesin* panel's reference to the prejudice requirement, we note that we are bound by the *Salesin* decision, MCR 7.215(I)(1), and that defendant fails to cite any cases utilizing a different waiver analysis under the Michigan Arbitration Act, thus abandoning this subissue. *Mudge v Macomb Co*, 458 Mich 87, 104-105; 580 NW2d 845 (1998).

actions tend to indicate a waiver of the right to arbitration.

> In most jurisdictions, the right to arbitration may be waived by certain conduct, with each case decided on the basis of its particular facts and circumstances:
>
> "Various forms of participation by a [party] in an action have been considered by the courts in determining whether there has been a waiver of the [party]'s right to compel arbitration or to rely on arbitration as a defense to the action. It has been generally held or recognized that by such conduct as defending the action or proceeding with the trial, a [party] waives the right to arbitration of the dispute involved. A waiver of the right to arbitrration [sic] . . . has also been found from particular acts of participation by a [party], each act being considered independently as constituting a waiver. Thus, a [party] has been held to have waived the right to arbitration of the dispute involved by filing an answer without properly demanding or asserting the right to arbitration, by filing an answer containing a counterclaim . . . without demanding arbitration or by filing a counterclaim which was considered inconsistent with a previous demand for arbitration, by filing a third-party complaint or cross-claim, or by taking various other steps, including filing a notice of readiness for trial, filing a motion for summary judgment, or utilizing judicial discovery procedures." [*Hendrickson, supra* at 299-300, quoting anno: *Defendant's participation in action as waiver of right to arbitration of dispute involved therein,* 98 ALR3d 767, § 2, pp 771-772.]

See also *Salesin, supra* (noting that defending an action without seeking to invoke a right to compel arbitration constitutes a waiver of the right to arbitration); *North West Michigan Constr, supra* at 651-652, quoting *Henderson, supra* at 300. A party does not waive the right to arbitrate, however, by litigating an issue that is not arbitrable. *Auto Club Ins Ass'n v Lozanis,* 215 Mich App 415, 421-422; 546 NW2d 648

(1996), overruled in part on other grounds in *Perry v Sied*, 461 Mich 680, 690; 611 NW2d 516 (2000).

B

With respect to the waiver issue, we first consider the disputed question whether plaintiff engaged in acts inconsistent with its right to arbitrate. The trial court found without specific explanation that plaintiff's "prior conduct of litigation was not inconsistent with the right to arbitrate." No dispute exists that for approximately twenty months before filing its demand for arbitration plaintiff pursued litigation against defendant, conducting discovery and generating two trial court files of documents. The parties vigorously dispute, however, the import or nature of plaintiff's litigation. Defendant submits that plaintiff's trial court complaint sought only damages for defendant's alleged receipt of benefits beyond those contemplated within the severance agreement, and that plaintiff's attempt to institute arbitration seeking the same relief constitutes "an attempt to take a second bite of the apple." Plaintiff explains that its trial court complaint alleged defendant's fraud in negotiating the severance agreement and tested the validity of the agreement. Plaintiff denies that litigating this preliminary issue before the trial court waived plaintiff's right to demand arbitration regarding the separate issue of enforcing the agreement according to its intended terms.

Plaintiff correctly states that it is proper for a trial court to consider questions concerning the existence or validity of an arbitration agreement. "The first inquiry into the arbitrability of a dispute is to determine whether an arbitration agreement has been

reached by the parties." *Horn v Cooke,* 118 Mich App 740, 744-745, 746; 325 NW2d 558 (1982) (noting that an arbitration agreement signed as a result of force or coercion or fraudulent misrepresentation does not bind the parties). "The determination of whether an arbitration contract exists is for the courts to decide, applying general contract principles." *Id.* See also MCR 3.602(B)(2) (providing that "[i]f the opposing party denies the existence of an agreement to arbitrate, the court shall summarily determine the issues and may order arbitration or deny the application); *Arrow Overall Supply Co v Peloquin Enterprises,* 414 Mich 95, 99; 323 NW2d 1 (1982) ("The existence of a contract to arbitrate and the enforceability of its terms is a judicial question which cannot be decided by an arbitrator.").

After reviewing the trial court record, however, we are not persuaded by plaintiff's characterization of its trial court claims as challenges to the enforceability or validity of the parties' agreement to arbitrate. Plaintiff's complaint did indeed raise three counts that, if established, would represent a basis for avoiding or rescinding the severance agreement. The three counts of the complaint, "Civil Fraud" (count I), "Breach of Fiduciary Duty" (count II) and "Fraudulent Concealment" (count III), allege that during negotiations regarding the severance agreement defendant misrepresented the extent of his entitlement to benefits or concealed that he previously had received certain benefit payments, resulting in plaintiff's misinformed consent to the severance agreement. Plaintiff alleged injury "in excess of $10,000," and "request[ed] this Honorable Court grant judgment for Plaintiff . . . *for damages* in an amount not less than"

$10,000, "and additional relief, including costs and attorney fees, as this Court deems appropriate." The complaint notably lacked any indication that plaintiff sought avoidance or rescission of the severance agreement.

Other indications of record reflect that regardless of the assertions of fraud within its complaint, plaintiff did not challenge the validity of the severance agreement. In answering the breach of contract count in defendant's countercomplaint, plaintiff expressly "admit[ted] that a binding contract was formed upon the acceptance of [defendant's] Letter of Resignation but denie[d] any implication that the terms and conditions of the Letter . . . were the exclusive provisions of the contract." In responding to defendant's motion for summary disposition based on the release provision of the severance agreement, plaintiff wrote that its "claims all seek to enforce the terms of Defendant's resignation agreement and are thus expressly preserved by the release clause."[2] Furthermore, at the

---

[2] Plaintiff proceeded to explain its position as follows:

When Plaintiff's Board of Education accepted Defendant's resignation by its Resolution of February 1, 1996 . . . it authorized administration "to take whatever action necessary to give these letters [of resignation] full effect." To the extent that Defendant had received advance payment of certain benefits and had not repaid those sums to Plaintiff as of the date of his resignation, the inclusion of such sums in the consideration to be received by Defendant did not require administration to take any action to effectuate the parties' agreement, i.e., no money had to be paid Defendant because he had already received it as an advance. Due to Defendant's false representations and concealment, however, Plaintiff was caused to pay these sums to him a second time in contravention of the parties' agreement.

The release clause upon which Defendant now relies, while concededly drawn in broad terms, specifically reserved to the parties the right to pursue claims against each other to enforce the terms of their agreement . . . . Thus, if Plaintiff's claims in this lawsuit are

May 6, 1998, hearing regarding defendant's motion for summary disposition, plaintiff's counsel argued as follows regarding the nature of plaintiff's complaint:

> *We do not seek in this case to contravene the agreement which is the subject of the dispute here. And, in fact, we seek to enforce the agreement consistent with the parties' intent.* We maintain . . . that the parties never intended through the negotiations that led to this agreement to pay the Defendant twice for the same benefit. . . .

*    *    *

> The point, Your Honor, is that this was not an agreement to pay a set amount of money, and indeed, if you look at the terms of the agreement, that is very clear. It was an agreement to pay the Defendant for whatever fringe bene-

---

claims to enforce the parties' agreement, they are by definition claims permitted by the release clause. . . .

By asserting that it has paid Defendant twice for benefits the parties agreed would be paid once and seeking the overpayment amount as damages, *Plaintiff is clearly attempting to enforce the terms of the parties' agreement in this lawsuit. Plaintiff is not seeking rescission of the agreement, nor is it asking the Court to undo any of the agreement's terms.* Rather, Plaintiff is simply seeking to obtain the benefit of its bargain by recouping monies it never agreed to pay twice. [Emphasis added.]

Plaintiff continued:

Defendant's legal argument proceeds on *the mistaken assumption that Plaintiff is seeking to repudiate or rescind the parties' agreement.* As demonstrated in the preceding section of Plaintiff's brief, *Plaintiff's claims have all been brought to* enforce *the agreement* by requiring Defendant to pay as damages those sums Plaintiff paid him twice as a result of his wrongful conduct—sums which, under the terms of the parties' agreement, he was entitled to be paid only once.

*    *    *

. . . By way of this lawsuit, Plaintiff simply seeks to enforce the terms of the parties' negotiated settlement by establishing that Defendant has received more money than that to which the agreement entitled him. [Emphasis added.]

fits were outstanding as of that point in time. The law is very clear that if contractual intent is disputed—and I don't even think it's going to be disputed in this case—that's an issue of fact for the jury to decide. If the jury decides and concludes . . . that the parties' intent was only to pay the fringe benefits . . . if they were outstanding, we are entitled to the damages which we sought in this case.

Now, Your Honor, it's important also that you understand our damage theory. We, for example, consistent with the terms of the agreement, concede that we owed him for all of the insurances that we continued after he resigned employment through the end of the year. . . . And we as well concede that he's entitled to some accumulated vacation days, which was also a component of the settlement agreement.

*So we're not taking a position which contravenes or repudiates that agreement. We take the position that the agreement is valid by its terms, but that the intent was not to pay him twice.*

\*          \*          \*

*So, the point I'm making is that we do not repudiate this agreement, and in deed* [sic] *the same defense we would assert to their counter-claim is the exact same case that we'll bring forward at the time of trial to support our cause of action.* [Emphasis added.]

Only after the trial court dismissed plaintiff's complaint, in response to defendant's motion to stay arbitration, did plaintiff suggest for the first time that its complaint tested the validity and enforceability of the parties' severance agreement.

Consequently, plaintiff's complaint involved an arbitrable claim. Whether a dispute is arbitrable represents a question of law for the courts that we review de novo. *Watts v Polaczyk*, 242 Mich App 600, 603; 619 NW2d 714 (2000); *Huntington Woods v Ajax Paving Industries, Inc (After Remand)*, 196 Mich

App 71, 74; 492 NW2d 463 (1992). To ascertain the arbitrability of an issue, the court must consider whether there is an arbitration provision in the parties' contract, whether the disputed issue is arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract. *Huntington Woods, supra* at 74-75. Any doubts regarding the arbitrability of an issue should be resolved in favor of arbitration. *Watts, supra* at 608.

In this case, the severance agreement contains the following, broadly stated arbitration provision:

> *Any dispute, or any action to enforce these terms and conditions, shall be resolved through binding arbitration* according to the rules of labor arbitration of the American Arbitration Association, and any arbitrator's decision may be enforced through the Oakland County Circuit Court, as allowed by Michigan law. [Emphasis added.]

Plaintiff's complaint alleged that during negotiations defendant misrepresented the benefits to which he was entitled by failing to disclose that in 1994 he had obtained advances against his accrued benefits, and by misrepresenting the number of his accrued personal and vacation days. According to plaintiff, defendant "wrongfully secured under the [severance agreement] a second payment" for the benefits advanced in 1994, and "otherwise wrongfully received funds from Plaintiff as part of" the severance agreement. As set forth above, plaintiff's counsel argued that defendant was overpaid contrary to the parties' true intent and that the court therefore should award plaintiff the

overpayment.[3] These allegations and argument clearly reflect that plaintiff sought to recover an alleged overpayment contrary to the terms of the agreement. We find that plaintiff's overpayment claims at least arguably fell within the broad scope of the arbitration provision concerning "[a]ny dispute, or any action to enforce [the agreement's] terms and conditions," and was not expressly exempted from arbitration. Accordingly, we conclude that plaintiff's overpayment claims constituted arbitrable issues. *Watts, supra.*

Because the record clearly demonstrates that for the first year and eight months of litigation plaintiff attempted "to enforce the agreement consistent with the parties' intent," we find plaintiff's pursuit of this litigation plainly inconsistent with plaintiff's long-delayed demand for arbitration to enforce the parties' agreement. Further conduct by plaintiff wholly inconsistent with its right to arbitrate includes plaintiff's (1) failure to mention arbitration as an affirmative defense in response to defendant's counterclaim, which expressly sought enforcement of the parties' agreement,[4] *Hendrickson, supra* (noting that waiver of arbitration can occur when a party files a responsive pleading without asserting the right to arbitration); *Joba Const Co, Inc v Monroe Co Drain*

---

[3] We note the tacit admission by plaintiff's counsel that plaintiff, defendant's employer that presumably had full access to all defendant's employment records, accepted the severance agreement without investigating the status of defendant's accrued benefits.

[4] Plaintiff filed two sets of answers and affirmative defenses to defendant's counterclaim, the second of which was withdrawn after the parties spent some time arguing regarding the propriety of disqualifying plaintiff's counsel who filed the first set of responses. Notably, neither set of affirmative defenses to defendant's countercomplaint mentioned arbitration. Not until August 26, 1998, did plaintiff file its motion to compel arbitration of defendant's countercomplaint.

*Comm'r*, 150 Mich App 173, 179; 388 NW2d 251 (1986), and (2) pretrial (a) exchange of exhibit and witness lists and amendment of its witness list, (b) filing of forty-five requests for admission and "Genuineness of Documents," (c) filing of a motion and supporting brief to compel additional responses by defendant to the requests for admission, (d) participation in mediation and facilitation, and (e) participation in conducting eight witness depositions. *Id.* at 178-179 ("Pursuing discovery is regarded as being inconsistent with demanding arbitration, since discovery is not generally available in arbitration."); *SCA Services, Inc v General Mill Supply Co*, 129 Mich App 224, 231; 341 NW2d 480 (1983) (similarly noting that discovery in court may be inconsistent with demanding arbitration).[5] See also *Salesin, supra* at 356, and *North West Michigan Const, supra* at 651-652, explaining generally that defending an action without seeking to invoke the right to arbitration constitutes a waiver of this right.

C

Regarding whether plaintiff had knowledge of the arbitration provision within the parties' agreement, the parties do not dispute plaintiff's awareness of its

---

[5] We reject plaintiff's suggestion that its participation in discovery was consistent with its right to arbitrate because the discovery was limited to facts regarding its unarbitrable fraud claims. *SCA Services, supra* at 231. As indicated above, we are not persuaded that plaintiff's complaint was limited to issues of defendant's asserted fraud as a basis for avoiding the parties' agreement. Furthermore, plaintiff provides as evidence of the limited scope of its discovery only three pages of defendant's deposition, which itself was at least eighty-three pages long. Moreover, the very limited portions of the several depositions appearing within the lower court record do not permit us to conclude that the parties' discovery addressed only limited issues of fraud.

right to invoke arbitration. We additionally note that an attorney for plaintiff drafted the severance agreement. See *Salesin, supra* at 356 (finding that the drafting party certainly knew of the contract's arbitration provision).

D

With respect to the last waiver element mentioned in *Salesin, supra,* the trial court found that defendant had suffered no prejudice caused by plaintiff's postlitigation demand for arbitration because "the grant of Summary Disposition pursuant to MCR 2.116(C)(7) was not a decision on the merits." The trial court had granted defendant summary disposition of plaintiff's complaint on the basis of the release provision of the severance agreement.[6] The court viewed the broad language of the release as contemplating only a lawsuit seeking "actual enforcement of the terms of the agreement," but opined that the claims of fraud and breach of fiduciary duty in plaintiff's complaint "are not to enforce the terms of the . . . agreement but rather fall squarely within the parameters of 'any and all claims,' 'known and unknown' within the agreement's release provision." The court concluded that plaintiff's claims within the scope of the release were barred because plaintiff failed to tender the consider-

---

[6] The release provision stated as follows:

> If accepted by the Board, these terms shall be in full and complete settlement of any and all claims, whether known or unknown, that we have or may have against each other or our respective members, trustees, employees, agents, attorneys, and servants. This paragraph shall be considered as our full and absolute mutual release. The only claims that will survive the acceptance of these terms will be the right of either party to enforce them.

ation recited in the agreement before or simultaneously with its filing of suit.[7] *Stefanac v Cranbrook Educational Community (After Remand)*, 435 Mich 155, 176-177; 458 NW2d 56 (1990) (explaining that "[t]o allow a grace period for tender after the commencement of a lawsuit would undermine" the stability and "very essence of a release and settlement" to avoid litigation); *Collucci v Eklund*, 240 Mich App 654, 659; 613 NW2d 402 (2000) (noting that a plaintiff challenging a release on the basis of fraud may not raise the challenge until he has tendered the consideration he received in exchange for the release).

The trial court mistakenly concluded that its grant of summary disposition pursuant to MCR 2.116(C)(7) did not constitute an adjudication on the merits. This Court has explained that the trial court's determination that plaintiffs entered into a binding release that bars their claims constitutes a decision on the merits. *Rinke v Automotive Moulding Co*, 226 Mich App 432, 440; 573 NW2d 344 (1997). Any other conclusion could expose a defendant to another suit despite the fact that the plaintiff entered into a binding release, and also might allow a plaintiff to attempt to circumvent the *Stefanac* rule by tendering consideration before filing a new action. *Rinke, supra.*

We find that after expending time and resources to defend himself in litigation against plaintiff's complaint, which sought to enforce the settlement agreement according to the parties' alleged intent, and obtaining a dismissal of plaintiff's complaint on its merits, defendant certainly would endure unfair pre-

---

[7] Plaintiff did not appeal the trial court's summary disposition ruling.

judice were he forced to submit to plaintiff's long-delayed demand for arbitration. *Salesin, supra* at 356-357 (concluding that the plaintiff would suffer prejudice if the Court vacated the trial court's decision and referred the case to arbitration after the plaintiff expended resources to litigate the merits of the case in the trial court, and this Court, as a result of the defendant's initial refusal to arbitrate). Plaintiff's decision to litigate this matter aggressively for over 1½ years before resorting to arbitration plainly defeats the purpose of arbitration, which is "the final disposition of differences between parties in a faster, less expensive, more expeditious manner than is available in ordinary court proceedings." *Joba, supra* at 179-180.

III

Our conclusion that plaintiff waived its right to arbitration renders unnecessary our consideration of defendant's res judicata arguments.[8]

In conclusion, we wish to reemphasize that our decision intends to reinforce Michigan's strong and unequivocal public policy to encourage arbitration "as an inexpensive and expeditious alternative to litigation." *Rembert v Ryan's Family Steak Houses, Inc,* 235 Mich App 118, 123; 596 NW2d 208 (1999). Plaintiff's conduct of the instant litigation reflects a clear disregard for concerns of expedient dispute resolution and conservation of judicial resources. Michigan law plainly recognizes a waiver of arbitration by participation in judicial proceedings such as filing

---

[8] We nonetheless note that res judicata does not apply within a single action. *Harvey v Harvey,* 237 Mich App 432, 437; 603 NW2d 302 (1999).

motions, seeking discovery, and participating in mediation regarding arbitrable claims. *Joba, supra; SCA Services, supra.* We will not sanction plaintiff's utilization of the court system, with its scarce resources, merely to test the judicial waters until it received an unfavorable ruling, and its untimely demand for arbitration after more than 1½ years in litigation. *NuVision v Dunscombe,* 163 Mich App 674, 684; 415 NW2d 234 (1987) ("The purpose of arbitration is to avoid protracted litigation.").

We reverse the trial court's order denying defendant's motion to quash arbitration and granting plaintiff's motion to compel arbitration of all contract issues, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.