*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRANDON LESNIAK, AUTUMN LESNIAK, CASEY FRUSHOUR, ANNA M. FRUSHOUR, RAHUL CHANDE, and ANUSHREE CHANDE,

Plaintiffs-Appellees,

v

ARCHON BUILDERS, LLC, also known as ARCHCON BUILDERS, LLC, RODWAN RAJJOUB, HIGHPOINT BUILDERS, LLC, also known as HIGHPOINTE BUILDERS, LLC, JOHNSON BUILDING GROUP, LLC, and LOUIS JOHNSON,

Defendant-Appellants,

and

STEWART TITLE GUARANTY COMPANY, CHICAGO TITLE INSURANCE COMPANY, and LIBERTY TITLE AGENCY, INC.,

Defendants.

UNPUBLISHED
December 19, 2019

No. 345228
Washtenaw Circuit Court
LC No. 17-000637-CK

Before: TUKEL, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Defendants Archon Builders, LLC; Rodwan Rajjoub; Highpoint Builders, LLC; Johnson Building Group, LLC; and Louis Johnson, appeal as of right the trial court's order denying their motion for summary disposition against plaintiffs Brandon and Autumn Lesniak, Casey and Ana Frushour, and Rahul and Anushree Chande. Defendants argue that the trial court erred by denying their motion for summary disposition because they were entitled to arbitration under the terms of the construction agreements entered into by the parties. We reverse the trial court's order denying defendants' motion for summary disposition because (1) the arbitration terms of

the construction agreements sufficiently relate to plaintiffs' claims to require arbitration, and (2) defendants have not waived their right to arbitration.

## I. FACTS

This case arose out of a series of contracts, hereinafter referred to as the construction agreements and the purchase agreements, relating to plaintiffs' purchases of three lots for the construction of three new homes in the Lohr Woods Site Condominium complex located in Pittsfield Township, Michigan. Archon Builders, Inc. developed and owned the condominium site. Plaintiffs contracted with Highpoint Builders, LLC, and Johnson Building Group, LLC, both owned by Louis Johnson, to build plaintiffs' homes on the lots at issue. Before plaintiffs entered into any contracts with defendants, Archon conveyed to Highpoint an option to purchase the three empty lots in Lohr Woods that plaintiffs subsequently bought.

In late 2015 and early 2016, Highpoint entered into agreements with plaintiffs to construct new single family homes on each of the three lots and to convey its option to purchase these lots to plaintiffs. Johnson signed each of the construction agreements as the representative of Highpoint. Plaintiffs signed each respective construction agreement as customers. Neither Archon nor Rajjoub signed the construction agreements. The construction agreements provide in relevant part as follows:

> 15. Title. Builder shall convey its option to purchase the lot from Archcon Builders Inc., shall accept responsibility for the now outstanding "capital benefit charge" which must be paid as a condition of building permit and the Customer shall acquire good title to the real estate from another. The Builder shall provide shall provide [sic] lien waivers to the Customer showing that the premises are free and clear of liens at all times and upon completion.

> \* \* \*

> 20. Arbitration. Any controversy, claim or dispute arising out of or relating to this Agreement shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA") and the Federal Arbitration Act (Title 9 of U.S. Code) and judgment rendered by the arbitrator(s) may be confirmed, entered and enforced in any court having jurisdiction. As a condition precedent to arbitration, the dispute shall first be mediated in accordance with the Construction Industry Mediation Rules of AAA, or such other mediation services selected by the Builder. This includes, but is not limited to, any complaints and/or claims issued by the Department of Consumer and Industry Services as contemplated by MCLA 339.2411. Enforcement of this contract regarding court costs, arbitration, administration, and/or attorney fees should be the responsibility of Customer.

Under the construction agreements' terms, Highpoint agreed to convey to plaintiffs its option to purchase the lots from Archon. In addition, the parties agreed to arbitrate "[a]ny controversy, claim or dispute arising out of or relating to this agreement."

Plaintiffs each signed purchase agreements for the lots on the same day that they signed the construction agreements. Specifically, each purchase agreement provided in relevant part:

> This agreement is by and between Archcon Management, LLC, by its Agent, Highpointe Builders, LLC, . . . (Seller) and [plaintiffs' respective names and address] ("Buyers") and provides the terms and conditions on which the Buyer shall purchase a residential lot in the subdivision known as "Lohr Woods Subdivision," being Lot [number], and has its effective date the date of the signature of the parties.

> \* \* \*

> Seller shall convey to Buyer by Warranty Deed, clear title and a title insurance policy by Liberty Title of Ann Arbor, showing only typical easements and the aforementioned covenants.

In 2017, plaintiffs began to notice significant flooding and standing water in the backyards of their homes. After contacting Pittsfield Township, plaintiffs were informed that their properties were covered in water because the backyards were in a floodplain area. When plaintiffs inquired about making modifications to the floodplain areas, they discovered that each of their lots was subject to a conservation easement that precluded modifications. Neither the existence of the floodplains nor the existence of the conservation easement was disclosed to plaintiffs before they signed the purchase agreements and construction agreements.

In July 2017, plaintiffs sued defendants under various theories of fraud and innocent misrepresentation, alleging that defendants' actions diminished values of their properties and that defendants knew or should have known about this conservation easement. Plaintiffs alleged that defendants breached the purchase agreements, but did not allege that defendants breached the construction agreements. However, plaintiff's allegations made reference to a provision in the construction agreements stating that Highpoint had the authority to remove all vegetation from the lots.

In response, defendants filed their answer and affirmative defenses. Defendants argued that plaintiffs' claims were covered by the arbitration clause in the construction agreements. Defendants additionally filed a counterclaim alleging that plaintiffs breached the construction agreements by not proceeding to arbitration.

In March 2018, defendants filed a motion for summary disposition under MCR 2.116(C)(7), (C)(8), (C)(9), and (C)(10). Defendants argued, in pertinent part, that the arbitration clause in the construction contracts covered defendants' alleged breach of contract. Thus, defendants argued, plaintiffs should bring their claims to arbitration, not the courts. Plaintiffs responded that their claims were not subject to the arbitration clause in the construction agreements because plaintiffs' claims arose out of the purchase agreements, not the construction agreements. After a brief oral argument, the trial court denied defendants' motion for summary disposition. In its written order denying defendants' motion for summary disposition, the trial court stated that it was denying defendants' motion because it felt that there were "too many factual issues in dispute."

Defendants subsequently moved for reconsideration, essentially reiterating their previous arguments. Plaintiffs responded, also largely reiterating their previous arguments. Plaintiffs, however, additionally argued for the first time that defendants waived the right to compel arbitration by their inaction and failure to actually enforce the arbitration clause. The trial court denied defendants' motion for reconsideration. Defendants now appeal as of right.

## II. APPLICABILITY OF THE ARBITRATION CLAUSE

### A. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(7). Under MCR 2.116(C)(7), summary disposition is appropriate if a claim is barred because of an agreement to arbitrate . . . ." *Beck v Park West Galleries, Inc*, 499 Mich 40, 45; 878 NW2d 804 (2016) (quotation marks and citation omitted; alteration in original).[1] Neither the movant nor responding party under MCR 2.116(C)(7) is required to file supportive material. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). Any documentation that is provided to the court, however, must be substantively admissible evidence and must be considered by the court. *Id*. The plaintiff's well-pleaded factual allegations must be accepted as true unless contradicted by documentation submitted by the movant. *Id*.

Furthermore, "[w]hether an issue is subject to arbitration is also reviewed de novo." *Beck*, 499 Mich at 45; *Madison Dist Pub Sch v Myers*, 247 Mich App 583, 594; 637 NW2d 526 (2001). "Whether one has waived his right to arbitration depends on the particular facts and circumstances of each case." *Madison Dist Pub Sch*, 247 Mich App at 588. We review de novo whether particular circumstances establish a waiver of the right to arbitration. *Id*. In addition, we review for clear error a trial court's factual determinations regarding such circumstances. *Id*. "A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with a definite and firm conviction that a mistake has been made." *McNamara v Horner*, 249 Mich App 177, 182-183; 642 NW2d 385 (2002). Finally, "questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

### B. ANALYSIS

"An agreement to arbitrate is a contract." *Ferndale v Florence Cement Co*, 269 Mich App 452, 458; 712 NW2d 522 (2006). "Accordingly, we must apply the same legal principles that govern contract interpretation to the interpretation of an arbitration agreement." *Beck*, 499 Mich at 45. "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *Ferndale*, 269 Mich App at 458; see also *Beck*, 499 Mich at 45. Determining the parties' intent "requires an examination of the language of the contract according to its plain and ordinary meaning." *Beck*, 499 Mich at 45-46. We "must interpret and enforce clear and

---

[1] While defendants moved for summary disposition under MCR 2.116(C)(7), (C)(8), (C)(9), and (C)(10), they only argue on appeal that the trial court should have granted summary disposition to them under MCR 2.116(C)(7).

unambiguous language as written." *Id*. at 46. The existence of an arbitration agreement is a judicial question for the courts. *Ferndale*, 269 Mich App at 458.

> To ascertain the arbitrability of an issue, the court must consider whether there is an arbitration provision in the parties' contract, whether the disputed issue is arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract. Any doubts regarding the arbitrability of an issue should be resolved in favor of arbitration. [*Madison Dist Pub Sch*, 247 Mich App at 595 (citation omitted).]

But "[a] party cannot be required to arbitrate an issue which he has not agreed to submit to arbitration." *Beck*, 499 Mich at 46 (alteration in original; quotation marks and citation omitted). Furthermore, "Michigan law requires that separate contracts be treated separately." *Id*.

There are several contracts involved in the transactions in this case. However, only the construction agreements contain arbitration clauses, which state in pertinent part: "Any controversy, claim or dispute arising out of or relating to this Agreement shall be settled by arbitration . . . ." Defendants now seek to apply the arbitration clauses of the construction agreements to encompass the entirety of the transactions between the parties. Defendants argue that the phrase "arising out of or relating to this Agreement" located within the arbitration clause is sufficiently broad to encompass the purchase agreements and other related documents regarding purchase of the lots at issue.

As a general matter, our Supreme Court previously has recognized that absent express references to other agreements, there is insufficient evidence to determine that parties intended to apply an arbitration clause in one contract to other contracts between parties. See *Beck*, 499 Mich at 47-48 (reversing this Court's conclusion that the term "[a]ny disputes or claims of any kind" was sufficient to apply the arbitration clause retroactively to earlier agreements because "[e]ach unique transaction, accompanied by a separate invoice, constituted a separate and distinct contract, capable of independent enforcement."). "[A] general policy favoring arbitration cannot trump the actual intent and agreement of the parties." *Id*. at 49.

The construction and purchase agreements in this case establish the parties' intent to arbitrate because they are temporally and substantively integral to one another such that they must be construed together. "When there are several agreements relating to the same subject matter, the intention of the parties must be gleaned from all the agreements." *Omnicom of Mich v Giannetti Inv Co*, 221 Mich App 341, 346; 561 NW2d 138 (1997). By using the language requiring the parties to the construction agreements to arbitrate claims or disputes "relating to this Agreement," the parties expressed a clear intent to subject to arbitration all disputes arising from the construction contracts. The purchase agreements could only be entered into because the construction agreements conferred to plaintiffs the right to purchase their lots. Thus, it was within the contemplation of the parties that any claimed breach of contract claim based on the purchase agreements would be considered in pari materia with the arbitration provision of the construction agreements, which created the right to purchase in the first instance. See *id*. at 346-347 (holding that when parties enter into multiple contracts their intent "must be gleaned from all the agreements"). Moreover, the temporal and substantive relationship between the contracts indicates a type of "ongoing" business relationship beyond the individual contracts themselves.

See *Beck*, 499 Mich at 50 (distinguishing federal arbitration cases based on the ongoing business relationships of the litigants). Accordingly, in light of the interplay between these two contracts, there is sufficient evidence of intent from the parties to apply the arbitration agreement in the construction agreements to the purchase agreements. By signing the construction agreements containing an arbitration clause, plaintiffs agreed to arbitrate not only disputes regarding the construction of the homes, but also disputes regarding the purchase of the lots on which the homes were to be constructed. See *Omnicom of Mich*, 221 Mich App at 346-347.

We additionally note that plaintiffs contend that the arbitration clauses should not apply because they have not alleged a violation of the construction agreements. Rather, they assert, the focus of their claims is fraud, misrepresentation, and contract violation *entirely* on the basis of the sale of the property itself, not the construction of the homes. Notably, however, in their complaint, plaintiffs expressly invoked the terms of the construction agreements to support their claim of fraud against defendants. Specifically, they alleged, "[t]he Developer Defendants represented that it [sic] had the ability to remove any vegetation necessary to complete construction." Although plaintiffs did not provide a citation for this allegation, it is a clear reference to ¶ 7 of the construction agreements. Accepting this factual allegation, see *Maiden*, 461 Mich at 119, plaintiffs have in fact invoked the terms of the construction agreement, and concomitantly, the arbitration clause. Furthermore, even if plaintiffs did not specifically invoke the language of the construction agreements, the gravamen of their complaint is that defendants failed to notify plaintiffs of the conservation easements on their properties. Plaintiffs were only able to purchase the properties because, through the construction agreements, they received an option to buy them. Consequently, their complaints necessarily arose out of the construction agreements. See *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007) ("It is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim.").

Finally, "[a]ny doubts about the arbitrability of an issue should be resolved in favor of arbitration." *Huntington Woods v Ajax Paving Indus, Inc*, 196 Mich App 71, 75; 492 NW2d 463 (1992). Because of this mandate, we resolve any ambiguity that may exist in favor of allowing defendants to invoke the arbitration clauses of the construction agreements. Thus, the trial court erred by denying summary disposition in this case because plaintiffs' claims were subject to the arbitration clause in the construction agreements.

III. WAIVER OF THE ARBITRATION CLAUSE

Even though plaintiffs' claims are subject to the arbitration clause in the construction agreements, defendants could have waived their right to invoke the arbitration clause. We hold that they have not. In resolving this issue, we first note that plaintiffs have not properly preserved their waiver argument. An issue raised in the trial court and pursued on appeal is preserved even if the trial court failed to address or decide the issue. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994). Plaintiffs argue as an alternative ground for affirmance in their brief on appeal that defendants waived arbitration. Plaintiffs, however, did not raise this issue in the lower court until filing their response to defendants' motion for reconsideration. "[W]here an issue is first presented in a motion for reconsideration, it is not properly preserved." *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 521; 773 NW2d 758 (2009). Nevertheless, "[t]his Court may review an unpreserved issue if it is

an issue of law for which all the relevant facts are available." *Id*. Because the facts relevant to arbitration waiver are present in the lower court record, we choose to address this issue.

## A. STANDARD OF REVIEW

"Whether one has waived his right to arbitration depends on the particular facts and circumstances of each case." *Madison Dist Pub Sch*, 247 Mich App at 588. We review de novo "whether the relevant circumstances establish a waiver of the right to arbitration." *Id*.

> Waiver of a contractual right to arbitrate is disfavored. The party arguing there has been a waiver of this right bears a heavy burden of proof and must demonstrate knowledge of an existing right to compel arbitration, acts inconsistent with the right to arbitrate, and prejudice resulting from the inconsistent acts." [*Id*. (quotation marks and citation omitted).]

## B. ANALYSIS

With respect to knowledge of an existing right to compel arbitration, e-mail correspondence between Brandon Lesniak and Johnson demonstrates that Johnson was continuously aware of the potential to resolve the dispute via arbitration. In an e-mail dated April 24, 2017, in response to Brandon's inquiries regarding the ongoing flooding issue, Johnson stated, "[i]t sounds like you want money and if so then I think that would need to be a process, possibility [sic] an arbitration."

In *Madison Dist Pub Sch*, 247 Mich App at 589, this Court noted that "a [party] has been held to have waived the right to arbitration of the dispute involved by filing an answer without properly demanding or asserting the right to arbitration, by filing an answer containing a counterclaim . . . without demanding arbitration . . . ." (first and second alterations in original; citation omitted). In this case, defendants raised arbitration as an affirmative defense in their initial responsive pleading. They also filed a counterclaim alleging that plaintiffs breached their contracts by not proceeding to arbitration. This Court further noted that filing a motion for summary disposition could be viewed as inconsistent with an intent to proceed to arbitration. *Id*. And in this case, defendants did file a motion for summary disposition raising multiple grounds for dismissal. Their primary argument, however, was their arbitration defense. Thus, it is clear that defendants knew of an existing right to compel arbitration and maintained arbitration as a defense throughout, thus belying any claim of waiver.

Plaintiffs nevertheless contend that, despite defendants' initial pleadings, defendants nevertheless waived the arbitration issue by waiting six months after filing their affirmative defenses before filing their motion for summary disposition. See *North West Mich Constr, Inc v Stroud*, 185 Mich App 649; 462 NW2d 804 (1990). In *North West*, the defendants answered the plaintiff's complaint in June 1988 affirmatively pleading that the plaintiff was required to submit its dispute to arbitration. *Id*. at 650-651. In December 1988, the defendants filed their pretrial statement, again raising the arbitration provision. *Id*. at 651. And in February 1989, the defendants moved to dismiss the plaintiff's complaint on the ground that the plaintiff was required to submit its claim to arbitration. *Id*. The trial court in that case denied the defendants' motion to dismiss because " '[w]ith the passage of time, the Defendant's [sic] active

participation in the litigation and the Defendant's [sic] failure to seek enforcement of the arbitration provision . . . there has been a waiver of that contractual right.' " *Id.* (second and third alterations in original; citation omitted). This Court affirmed, reasoning that the defendants, "by their active participation in the proceedings, had waived their right to assert arbitration as a ground for dismissal." *Id*. at 652.

*North West* does appear to support a conclusion that defendants in this case similarly waived their right to assert arbitration. As in *North West*, defendants answered plaintiffs' complaint in September 2017, affirmatively pleading that plaintiffs were required to submit their dispute to arbitration. And it was not until March 2018 that defendants moved to dismiss plaintiffs' complaint on the ground that plaintiffs were required to submit their claims to arbitration. However, *North West* is not binding on us, as it was issued in October 1990. See MCR 7.215(J)(1) (providing that Court of Appeals cases decided prior to November 1, 1990, are not binding). Although decisions issued before November 1990 should be "considered to be precedent and entitled to significantly greater deference than are unpublished cases," we are not "strictly required to follow" such decisions. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (emphasis omitted). Moreover, as recognized in *Madison Dist Pub Sch*, "[w]hether one has waived his right to arbitration depends on the particular facts and circumstances of each case." *Madison Dist Pub Sch*, 247 Mich App at 588; *North West*, 185 Mich App at 651 ("[E]ach case is to be decided on the basis of its particular facts."). And "[w]aiver of a contractual right to arbitrate is disfavored." *Madison Dist Pub Sch*, 247 Mich App at 588. We reiterate that plaintiffs failed to preserve this issue for our review by failing to raise it until their response to defendants' motion for reconsideration. See *Vushaj*, 284 Mich App at 521. Under these circumstances, we hold that plaintiffs have failed to meet their heavy burden of demonstrating prejudice, in that they failed to raise this waiver issue sooner. See *Madison Dist Pub Sch*, 247 Mich App at 588-589.

Additionally, from a temporal perspective, defendants' delay in litigating their arbitration defense is less significant than previous cases in which this Court found a waiver of arbitration. See *Madison Dist Pub Sch*, 247 Mich App at 600 (holding that there was a waiver of arbitration after "1½ years" of litigation); *North West*, 185 Mich App at 650-651 (holding that there was a waiver of arbitration when the defendants waited eight months to file their motion for dismissal). In this case, only six months passed between defendants' answer and their motion for summary disposition. Accordingly, this delay is less significant and fails to demonstrate "acts inconsistent with [the] right to arbitrate." *Madison Dist Pub Sch*, 247 Mich at 590. This also lessens any alleged prejudice plaintiffs argue. See *id*. at 599-600.

Because the purpose of arbitration is to preserve the time and resources of the courts in the interests of judicial economy, the time frame and relatively efficient manner in which defendants have litigated this case disfavors a finding of waiver. Simply put, defendants have not taken action which clearly waives their arbitration claims.

Reversed and remanded. We do not retain jurisdiction. Defendants, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ David H. Sawyer
/s/ Michael J. Riordan