*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ZIYAD ZORA,

Plaintiff-Appellant,

v

AM & LN PROPERTIES LLC and ALAN MARTIN MARKOVITZ,

Defendants-Appellees.

UNPUBLISHED
June 29, 2023

No. 360224
Wayne Circuit Court
LC No. 21-004069-CB

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff, Ziyad Zora, appeals by right the trial court's order granting summary disposition in favor of defendants, AM & LN Properties LLC and Alan Martin Markovitz, under MCR 2.116(C)(7). The trial court determined that Zora's lawsuit was barred by an arbitration agreement. We affirm.

## I. BACKGROUND

In March 2016, Zora and Markovitz each owned a 50% membership interest in AM & LN. At that time, Zora and Markovitz entered into a Membership Interest Purchase Agreement (MIPA), pursuant to which Zora sold his 50% interest in AM & LN to Markovitz for $1.8 million to be paid within six months. Under the MIPA, Markovitz was allowed two six-month extensions at the end of the initial six-month period to make full payment. But if Markovitz exercised one or both of the payment extensions, he would be required to pay an additional $10,000 in consideration to Zora for each six-month extension. The MIPA contained an arbitration clause, which provided, in relevant part, that "[a]ll disputes *arising under or because of this Agreement* that cannot be amicably resolved by the Parties shall be decided by binding arbitration." (Emphasis added.) The MIPA also provided that "[i]f Zora is not paid in full within eighteen (18) months of the date of this Agreement, instead of enforcing his rights for payment of the money due by this Agreement, Zora shall automatically return as a fifty (50%) percent owner in AM & LN Properties, LLC."

About one year later, in March 2017, Markovitz executed a Restated Operating Agreement (ROA) with AM & LN. The ROA indicated that Zora had assigned his 50% membership interest

to Markovitz in March 2016 and that as a result Markovitz was now the sole member of AM & LN. The ROA did not contain an arbitration clause. The ROA did set forth Markovitz's rights, powers, and duties as the sole member of AM & LN. Relevant here, the ROA stated that Markovitz had "the power, on behalf of the Company, . . . to sell, convey, mortgage, grant a security interest in, pledge, lease, exchange or otherwise dispose or encumber any real or personal property." The ROA further provided that any action Markovitz "is required or permitted to take may be taken by consent or approval without any meeting or any other action" and that "[t]he consent or approval must be in writing, set forth the action to be taken and be signed by the Member."

Markovitz allegedly failed to pay Zora the $1.8 million purchase price and the $20,000 in extension fees within eighteen months of the execution of the MIPA. Therefore, according to Zora, the 50% membership interest that he once held automatically reverted to him upon the default in October 2017, resulting in a 50/50 membership-interest allocation. In 2021, Zora brought this lawsuit against defendants, asserting that in June 2020 Markovitz improperly conveyed real property belonging to AM & LN without Zora's written consent, which was necessary given that Zora had regained his 50% membership interest about three years earlier. Zora further alleged that he did not consent to Markovitz's retention of the full consideration that had been paid upon the sale of the real property. Zora maintained that Markovitz failed to accurately reflect all capital contributions made by Zora and unilaterally exercised dominion and control over the sales proceeds by depositing them into his personal bank account. Zora claimed that Markovitz's conduct was illegal, fraudulent, and willfully unfair and oppressive in violation of MCL 450.4515. Zora contended that Markovitz was liable for receiving, possessing, concealing, and aiding in the concealment of embezzled and converted property, entitling Zora to treble damages under MCL 600.2919a.

In lieu of filing an answer, defendants moved for summary disposition under MCR 2.116(C)(7), arguing that the MIPA's arbitration clause was implicated and required dismissal of the court action. Zora responded by claiming that the connection between his lawsuit and the MIPA was too tenuous to trigger the application of the arbitration clause. Instead, Zora reasoned that his legal claims arose from the real estate transaction and the ROA, which did not contemplate a reversion of Zora's 50% interest and was thus no longer valid when the conveyance occurred. Defendants replied that the MIPA's arbitration clause mandated integration of all subsequent documents created because of the MIPA and that the ROA existed only because of the original "conditional" share conveyance under the MIPA. The trial court granted summary disposition to defendants on the basis that the proper interpretation of the ROA could not be determined absent reference to the earlier MIPA and the parties' ongoing relationship. The trial court opined that the ROA could not have been created without the MIPA.

Zora moved for reconsideration, arguing that our Supreme Court's decision in *Lichon v Morse*, 507 Mich 424; 968 NW2d 461 (2021), resulted in a material change in the law of arbitration that affected the trial court's ruling. Zora asserted that *Lichon* held that expansive interpretation of an arbitration agreement, which is how the trial court construed the instant arbitration clause, only applies in the context of collective bargaining agreements. Defendants maintained that *Lichon* in no way supported Zora's stance. The trial court denied the motion for reconsideration, concluding that Zora merely presented the same issues that the court had already ruled on and had not identified adequate grounds for relief. This appeal ensued.

-2-

## II. ANALYSIS AND RESOLUTION

On appeal, Zora argues that the trial court erred by granting summary disposition in favor of defendants because the dispute Zora sought to litigate did not arise under or because of the MIPA.

### A. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Altobelli v Hartmann*, 499 Mich 284, 294-295; 884 NW2d 537 (2016). The question whether a claim is subject to arbitration is also reviewed de novo, as is the construction of contractual language. *Id*. at 295. "We review a trial court's decision on a motion for reconsideration for an abuse of discretion." *Frankenmuth Ins Co v Poll*, 311 Mich App 442, 445; 875 NW2d 250 (2015).

### B. PRINCIPLES GOVERNING SUMMARY DISPOSITION UNDER MCR 2.116(C)(7)

Pursuant to MCR 2.116(C)(7), summary disposition is proper when a claim is barred because of "an agreement to arbitrate[.]" In *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008), this Court recited the principles pertaining to a motion for summary disposition brought pursuant to MCR 2.116(C)(7):

> Under MCR 2.116(C)(7) . . ., this Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [Citations omitted.]

### C. GENERAL RULES OF ARBITRATION

In *Altobelli*, 499 Mich at 295-296, our Supreme Court discussed the principles governing arbitration:

> Arbitration is a matter of contract. Accordingly, when interpreting an arbitration agreement, we apply the same legal principles that govern contract interpretation. Our primary task is to ascertain the intent of the parties at the time they entered into the agreement, which we determine by examining the language of the agreement according to its plain and ordinary meaning. In considering the scope of an arbitration agreement, we note that a party cannot be required to arbitrate an issue which it has not agreed to submit to arbitration. The general policy of this State is favorable to arbitration. The burden is on the party seeking to avoid the agreement, not the party seeking to enforce the agreement. In deciding the threshold question of whether a dispute is arbitrable, a reviewing court must avoid analyzing

the substantive merits of the dispute. If the dispute is arbitrable, the merits of the dispute are for the arbitrator. [Quotation marks, citations, and brackets omitted.]

"Th[e] threshold question of whether a dispute is subject to arbitration is for a court to determine." *Lichon*, 507 Mich at 437. "To ascertain the arbitrability of an issue, the court must consider whether there is an arbitration provision in the parties' contract, whether the disputed issue is arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract." *Madison Dist Pub Sch v Myers*, 247 Mich App 583, 595; 637 NW2d 526 (2001).

## D. DISCUSSION AND RESOLUTION

The issue presented in this case is whether the dispute alleged in Zora's lawsuit arose under or because of the MIPA. We initially note that the MIPA was referenced repeatedly in Zora's first amended complaint. Indeed, the MIPA formed the foundation of the complaint and the basis of Zora's claims for relief. This case cannot be viewed in a vacuum. There were multiple components of the dispute. The complaint was triggered by Markovitz's 2020 sale of real property held by AM & LN and his alleged retention of the proceeds from the sale. The March 2017 ROA purportedly served as the basis for Markovitz's actions in selling the real property. And Zora challenged the sale and the ROA, arguing that Markovitz had defaulted under the MIPA in October 2017, automatically resulting in a return of Zora's 50% interest in AM & LN, which effectively negated the continuing enforceability or viability of the ROA and required Zora's consent to the subsequent real estate sale. Therefore, the dispute, as alleged by Zora in his complaint, arose—at least in part—*because of* the MIPA, and resolution of the dispute will require the interpretation and application of the MIPA and a determination whether Markovitz defaulted under the MIPA. Such matters were plainly subject to arbitration, and defendants did not concede that the default provision in the MIPA was implicated or that Zora's 50% interest was returned to him. Absent resolution whether Markovitz complied with or defaulted under the MIPA, Zora's claims cannot be litigated to completion. Accordingly, the trial court did not err by granting defendants' motion for summary disposition under MCR 2.116(C)(7).

The Supreme Court's decision in *Lichon* does not undermine or conflict with our ruling. The *Lichon* Court ruled that while parties are bound to arbitration if a disputed issue is "arguably" within an arbitration clause *in the context of collective bargaining agreements*, the principle does not apply outside that context, in which case arbitration agreements are to simply be read like any other contract. *Lichon*, 507 Mich at 438. That is exactly what we have done here; our ruling is not predicated on the parties' dispute merely being "arguably" within the arbitration clause in the MIPA.

We affirm. Having fully prevailed on appeal, defendants may tax costs under MCR 7.219.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly