*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SALVATORE CANGEMI,

      Plaintiff-Appellant,

v

PRESTIGE CADILLAC, INC.,

      Defendant-Appellee.

UNPUBLISHED
June 9, 2022

No. 356069
Oakland Circuit Court
LC No. 2019-177457-NZ

---

SALVATORE CANGEMI,

      Plaintiff-Appellant,

v

PRESTIGE CADILLAC, INC.,

      Defendant-Appellee.

No. 356069
Macomb Circuit Court
LC No. 2020-001510-NZ

---

Before: CAMERON, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

In this action arising from plaintiff's purchase of a used automobile from defendant, plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(7) and (C)(10). The trial court dismissed most of plaintiff's claims under MCR 2.116(C)(7), holding that they were subject to an arbitration clause in the vehicle purchase agreement, and dismissed plaintiff's remaining claim under the Magnuson-Moss Warranty Act (MMWA), 15 USC 2301 *et seq.*, pursuant to MCR 2.116(C)(10). For the reasons set forth in this opinion, we affirm.

-1-

## I. BACKGROUND

In 2018, plaintiff purchased a used 2016 GMC Yukon from defendant. Plaintiff explained that he found the Yukon on a website and then went to defendant's showroom to see it. Before purchasing it, he spent about three hours at defendant's dealership looking at and discussing the vehicle. He also took it on a test drive and did not notice any problems with it. According to plaintiff, the salesperson told him that the vehicle was a lease turn-in, had only one prior owner, and had gone through the dealership's 72-point inspection. He was also told that the vehicle had not been involved in any accidents. Plaintiff agreed that he knew the vehicle was a used vehicle, but the purchase agreement incorrectly checked boxes indicating that the vehicle was both a "new" and a "demonstrator" vehicle. Plaintiff said that he did not check the vehicle's history through a reporting service, such as CARFAX, before making the purchase. Plaintiff also said he was told that the vehicle was still subject to the manufacturer's warranty.

On the way home from the dealership after making the purchase, the vehicle began to shake on the freeway at speeds over 60 miles per hour. Plaintiff reported the problem to defendant, who agreed to balance the tires, which seemed to address the problem. About three or four weeks later, however, plaintiff noticed that the bumper was melting, which he believed was because the muffler exhaust was too high. Defendant addressed the problem with the bumper, but when plaintiff received the vehicle back, the dashboard lights indicated a problem with the sensors on the vehicle, which were not working. Believing that the vehicle was still under General Motors' warranty, plaintiff took it to two other GM dealerships, both of which indicated that there was damage to the frame that made the vehicle unsafe. There was also damage to the vehicle's wiring, which had been sloppily repaired. Plaintiff learned that the vehicle had previously been involved in an accident and that GM would not honor the manufacturer's warranty due to that accident. Plaintiff took the vehicle back to defendant, who assured him that there was nothing wrong with the frame.

In October 2019, plaintiff brought this action against defendant, alleging claims for (1) fraudulent inducement, (2) breach of warranty of title, (3) breach of express warranties, (4) breach of the implied warranty of merchantability, (5) revocation of acceptance and damages, (6) violation of the MMWA, (7) violation of the Michigan Consumer Protection Act, MCL 445.901 *et seq.*, (8) violation of the motor vehicle code, MCL 257.248a, (9) mutual mistake, (10) innocent misrepresentation, and (11) violation of the Motor Vehicle Service and Repair Act, MCL 257.1301 *et seq.* Service was accomplished by sending a copy of the summons and complaint to the Michigan Secretary of State pursuant to MCL 257.248(4). Although the documents were served on the Secretary of State on October 28, 2019, they were not forwarded to defendant until December 10, 2019. Yet, as of January 15, 2020—over a month after the complaint was forwarded to defendant—defendant had still not responded to the complaint, and, consequently, a default was entered against it. On February 10, 2020, defendant moved to set aside the default, and the trial court granted defendant's motion.

Eventually, in October 2020, after discovery, defendant moved for summary disposition of all of plaintiff's claims. Defendant argued that it was entitled to summary disposition of the MMWA claims under MCR 2.116(C)(10) because it disclaimed any implied warranty and no express warranty was offered. Defendant argued that all other claims were subject to dismissal under MCR 2.116(C)(7) because they were subject to an arbitration clause in the purchase agreement. The trial court granted defendant's motion. This appeal followed.

## II. DEFAULT

Plaintiff first argues that the trial court erred by setting aside the default that was entered when defendant failed to timely respond to plaintiff's complaint. We disagree.

This Court "review[s] for an abuse of discretion a trial court's decision on a motion to set aside a default and whether to grant a default judgment." *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Id.*

The policy of this state is generally against setting aside defaults that have been properly entered. *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 229; 600 NW2d 638 (1999). MCR 2.603(D)(1) provides that "[a] motion to set aside a default or a default judgment, except when grounded on lack of jurisdiction over the defendant, shall be granted only if good cause is shown and a statement of facts showing a meritorious defense, verified in the manner prescribed by MCR 1.109(D)(3), is filed." Accordingly, a default will not be set aside unless the defaulting party demonstrates both "good cause" and a "meritorious defense." *Village of Edmore v Crystal Automation Sys, Inc*, 322 Mich App 244, 255; 911 NW2d 241 (2017). In this case, plaintiff does not contest that defendant demonstrated the existence of a meritorious defense. He argues, however, that the trial court erred by finding that defendant demonstrated good cause to set aside the default.

This Court has explained:

In determining whether a party has shown good cause, the trial court should consider the following factors:

(1) whether the party completely failed to respond or simply missed the deadline to file;

(2) if the party simply missed the deadline to file, how long after the deadline the filing occurred;

(3) the duration between entry of the default judgment and the filing of the motion to set aside the judgment;

(4) whether there was defective process or notice;

(5) the circumstances behind the failure to file or file timely;

(6) whether the failure was knowing or intentional;

(7) the size of the judgment and the amount of costs due under MCR 2.603(D)(4);

(8) whether the default judgment results in an ongoing liability (as with paternity or child support); and

(9) if an insurer is involved, whether internal policies of the company were followed.

\* \* \*

Neither of these lists is intended to be exhaustive or exclusive. Additionally, as with the factors provided in other contexts, the trial court should consider only relevant factors, and it is within the trial court's discretion to determine how much weight any single factor should receive. [*Village of Edmore*, 322 Mich App at 255-256, quoting *Shawl v Spence Bros, Inc*, 280 Mich App 213, 238-239; 760 NW2d 674 (2008).]

In this case, the summons was issued on October 22, 2019. Plaintiff served defendant in accordance with MCL 257.248(4), which provides that a licensed automobile dealer, as a condition precedent to the granting of a license, must stipulate and agree "that legal process affecting the dealer, served on the secretary of state or a deputy of the secretary of state, has the same effect as if personally served on the dealer." According to the proof of service, the complaint and summons were served on the Bureau of Licensing Regulations Division in Lansing, Michigan, on October 25, 2019. According to a letter from the Secretary of State, the documents were received there on October 28, 2019, but were not forwarded to defendant by mail until December 10, 2019. Thus, although service on the Secretary of State was a proper method of service, there was an approximate six-week delay before the Secretary of State forwarded the complaint to defendant, which appears to have received the complaint in mid-December 2019. The default was entered on January 15, 2020, after defendant failed to timely respond to the complaint. Defendant moved to set aside the default on February 10, 2020, which would have been approximately six to eight weeks after it would have received the complaint from the Secretary of State.

We agree with plaintiff that the manner of service, while unusual, was permissible. However, because the delay by the Secretary of State in forwarding the complaint to defendant contributed to defendant's delay in responding to the complaint, it properly can be considered, among other factors, in determining whether defendant demonstrated good cause for setting aside the default. Accordingly, the trial court did not err by considering this factor in determining whether it supported setting aside the default.

Plaintiff complains that the trial court did not address the delay that occurred after the summons and complaint were forwarded to defendant. Defendant primarily attributed this delay to a change in its personnel. Defendant's owner or general manager, Gregory Jackson, filed an affidavit in support of the motion to set aside the default. He averred that it was defendant's practice to forward a summons and complaint to the office manager, who was responsible for forwarding it to defendant's insurance carrier. When plaintiff's complaint was received in December 2019, defendant was in the process of having another employee assume that position after the previous office manager had left. According to Jackson, the new office manager found the letter from the Secretary of State in late January 2020, and promptly alerted Jackson, who directed the new manager to forward it to defendant's insurance carrier. Jackson characterized the delay in sending the complaint to the insurance carrier as a clerical error due to the change in office managers.

The record shows that the default was entered against defendant on January 15, 2020, but the trial court had not yet entered a default judgment. There is no indication that defendant's delay in responding to the complaint was intentional. The former office manager may have neglected or chosen not to handle the complaint in a timely manner, but when defendant's new office manager and Jackson learned of it, they acted promptly to ensure that it was forwarded to defendant's insurance carrier. The period of delay after the complaint was received from the Secretary of State before defendant responded was approximately six to eight weeks, but once the delay was discovered, Jackson, the new office manager, the insurance company, and assigned counsel acted quickly to respond to the complaint. In sum, considering that defendant was not responsible for the Secretary of State's initial delay in forwarding the summons and complaint to defendant, that defendant identified circumstances showing that the subsequent delay was attributable to a change in office personnel indicating that the failure to timely respond was not knowing or intentional, that defendant acted promptly upon discovering the summons and complaint, and that the duration between the entry of the default and the filing of defendant's motion to set aside the default was brief and a default judgment had not yet entered, the trial court did not abuse its discretion by finding that there was good cause to set aside the default. As noted, plaintiff does not contest that defendant demonstrated that it has a meritorious defense. Accordingly, the trial court did not abuse its discretion by setting aside the default and denying plaintiff's motion for entry of a default judgment.

## III. ARBITRATION

Next, plaintiff argues that the trial court erred by granting defendant's motion for summary disposition under MCR 2.116(C)(7) on the ground that all but one of plaintiff's claims were subject to an arbitration agreement. We disagree.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). Defendant moved for summary disposition under MCR 2.116(C)(7), which provides that summary disposition may be granted where "dismissal . . . is appropriate because of . . . an agreement to arbitrate or to litigate in a different forum[.]" In *Turner v Mercy Hosps & Health Servs of Detroit,* 210 Mich App 345, 348; 533 NW2d 365 (1995), this Court explained:

> A defendant who files a motion for summary disposition under MCR 2.116(C)(7) may (but is not required to) file supportive material such as affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(3); *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994). If such documentation is submitted, the court must consider it. MCR 2.116(G)(5). If no such documentation is submitted, the court must review the plaintiff's complaint, accepting its well-pleaded allegations as true and construing them in a light most favorable to the plaintiff.

If the pleadings or other documentary evidence reveal that there is no genuine issue of material fact, the court must decide as a matter of law whether the claim is barred. *Holmes v Mich Capital Med Ctr*, 242 Mich App 703, 706; 620 NW2d 319 (2000).

## A. WAIVER OF ARBITRATION

Plaintiff argues that the trial court erred by ruling that defendant did not waive its right to compel arbitration of plaintiff's claims. We disagree.

The existence and enforceability of an arbitration agreement is a question of law that this Court reviews de novo. *Michelson v Voison*, 254 Mich App 691, 693-694; 658 NW2d 188 (2003). This Court likewise reviews "de novo the question of law whether the relevant circumstances establish a waiver of the right to arbitration, and we review for clear error the trial court's factual determinations regarding the applicable circumstances." *Madison Dist Pub Sch v Myers*, 247 Mich App 583, 588; 637 NW2d 526 (2001).

Defendant argued that it was entitled to summary disposition on all claims except the MMWA claim because the claims were subject to a contractual arbitration clause. The parties' Vehicle Purchase Order provides, in relevant part:

> AGREEMENT TO ARBITRATE ANY CLAIMS. READ THE FOLLOWING ARBITRATION AGREEMENT CAREFULLY. IT LIMITS YOUR RIGHTS, INCLUDING YOUR RIGHT TO MAINTAIN A COURT ACTION. The parties to the agreement agree to arbitrate any claim, dispute or controversy, including all statutory claims and any state or federal claims, that may arise out of or are related to the purchase or lease of the automobile identified in this Motor Vehicle Retail Order and the financing thereof, including the validity of this agreement. The Arbitration Agreement is made pursuant to a transaction involving interstate commerce and should be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, and not by state law regarding arbitration. By agreeing to arbitration, the parties understand and agree that they are waiving their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes. . . . There are no limitations on the type of claims that must be arbitrated except for new car lemon law claims, Magnuson-Moss Warranty Act claims, and small claims filed as court action, unless such small claim is then removed, transferred or appealed to a different court. . . .

Defendant agreed that plaintiff's MMWA claim was not subject to arbitration, but argued that plaintiff's remaining claims were subject to arbitration under this agreement, and argued that it preserved its right to compel arbitration by pleading arbitration as an affirmative defense. In response to defendant's motion, plaintiff did not dispute that his claims were within the scope of the arbitration clause, but argued that defendant waived its right to arbitrate the claims by engaging in conduct inconsistent with demanding arbitration.

The trial court agreed that if the arbitration clause was enforceable, it required plaintiff to arbitrate all claims except the MMWA claim, and it rejected plaintiff's argument that defendant waived its right to arbitrate the claims. The court stated:

> Here, the Court is satisfied that Defendant did not waive its right arbitrate under the Vehicle Purchase Order. The cases cited by Plaintiff are distinguishable or do not constitute binding precedent regarding whether a party has waived its

right to arbitrate. Nevertheless, the "party arguing there has been a waiver of this right bears a heavy burden of proof and must demonstrate" "prejudice resulting from" the "acts inconsistent with the right to arbitrate." . . . The Court finds that Plaintiff has failed to demonstrate or even argue that he was prejudiced by Defendant's allegedly inconsistent conduct. Accordingly, Plaintiff has failed to meet his heavy burden of proof regarding whether he suffered any prejudice as a result of Defendant's conduct, which was allegedly inconsistent with Defendant's right to arbitrate. [Citation omitted.]

The arbitration clause in this case is subject to the Federal Arbitration Act (FAA), 9 USC 1 *et seq.* As explained in *Kauffman v The Chicago Corp,* 187 Mich App 284, 286; 466 NW2d 726 (1991):

> The federal arbitration act, 9 USC 1-15, governs actions in both federal and state courts arising out of contracts involving interstate commerce. *Southland Corp v Keating,* 465 US 1; 104 S Ct 852; 79 L Ed 2d 1 (1984); *Scanlon v P & J Enterprises,* 182 Mich App 347; 451 NW2d 616 (1990). . . . State courts are bound under the Supremacy Clause, US Const, art VI, § 2, to enforce the substantive provisions of the federal act. *Scanlon, supra.*

Plaintiff argues that because this case involves an arbitration agreement under the FAA, the trial court erred by failing to apply federal decisions to determine whether defendant waived its right to arbitration. In *Kauffman*, 187 Mich App at 291-292, this Court, applying federal caselaw, stated:

> Waiver of a contractual right to arbitration is not favored. *Fisher v A G Becker Paribas Inc*, 791 F2d 691 (CA 9, 1986). Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements. [*Moses H Cone Mem Hosp v Mercury Const Corp*, 460 US 1; 103 S Ct 927; 74 L Ed 2d 765 (1983)]. A party arguing there has been a waiver of the right to arbitration bears a heavy burden of proof. The party must demonstrate knowledge of an existing right to compel arbitration, acts inconsistent with the arbitration right, and prejudice to the party opposing arbitration resulting from the inconsistent acts. *Fisher*, p 694. Even accepting the trial court's finding that plaintiff has been prejudiced, there has been no showing that defendants acted inconsistently with their right to arbitration.

> Defendants' motion to compel arbitration in this case was their first responsive pleading to plaintiff's complaint. They raised the arbitration agreement as an affirmative defense. They engaged in discovery and brought and responded to motions in the circuit court only after the court erroneously denied their motion to compel arbitration. Their counterclaim for a preliminary injunction, although not referring to their claim that the disputes between the parties were subject to arbitration, asked only for injunctive relief to preserve the status quo, not for money damages for any claimed breach of plaintiff's covenant not to compete. There is no showing on these facts that defendants have at any time acted inconsistently with their claim of right to arbitration. *Rush v Oppenheimer & Co*, 779 F2d 885 (CA 2,

1985).  We believe any prejudice suffered by plaintiff in terms of time and expense, although unfortunate, was self-inflicted.  *Fisher*, p 698.  Plaintiff chose the forum in violation of his agreement to arbitrate disputes.  The strong federal policy in favor of enforcing arbitration agreements in transactions affecting commerce requires the conclusion that defendants did not waive their right to arbitration.

See also *Burns v Olde Discount Corp*, 212 Mich App 576, 580, 582; 538 NW2d 686 (1995) (applying *Kauffman* in a matter also subject to the FAA).

In *Salesin v State Farm Fire & Cas Co*, 229 Mich App 346, 356-357; 581 NW2d 781 (1998), this Court, citing *Burns*, stated:

> However, a party may waive the right to have a matter decided by arbitration:
>
>> A party may waive its right to arbitration, and each case must be decided on the basis of its individual facts.  However, waiver of a contractual right to arbitration is not favored.  A party arguing there has been a waiver of this right bears a heavy burden of proof.  The party must demonstrate knowledge of an existing right to compel arbitration, acts inconsistent with the right to arbitrate, and prejudice resulting from the inconsistent acts.  [*Burns v Olde Discount Corp*, 212 Mich App 576, 582; 538 NW2d 686 (1995) (citations omitted).]

In general, "defending the action or proceeding with the trial," that is defending an action without seeking to invoke a right to compel arbitration, constitutes a waiver of the right to arbitration.  See *North West Michigan Constr, Inc v Stroud*, 185 Mich App 649, 651-652; 462 NW2d 804 (1990), and *Hendrickson v Moghissi*, 158 Mich App 290, 299-300; 404 NW2d 728 (1987), quoting 98 ALR3d 767, § 2, pp 771-772.  State Farm is the appellant with regard to the trial court's decision in favor of Salesin on the merits of this case.  Given that State Farm drafted the insurance policy at issue with its arbitration provision, State Farm certainly knew of its right to arbitration.  Nevertheless, State Farm apparently refused to arbitrate its dispute with Salesin and further litigated the merits of its dispute with Salesin in the trial court without seeking an order to have the dispute settled in accordance with the contractual right to arbitrate.

> Thus, State Farm acted in a manner inconsistent with its right to arbitration.  Further, Salesin would be prejudiced if we vacated the trial court's decision and referred the matter to arbitration at this point after Salesin expended resources to litigate the merits of this case in the trial court, and this Court, as a result of State Farm's refusal to arbitrate.  State Farm has waived any right to arbitration.  Thus, we will not disturb the trial court's judgment on the merits in favor of Salesin with respect to his personal claim on the basis of the failure of the parties to arbitrate this dispute.

In *Madison Dist Pub Sch*, 247 Mich App at 588, this Court reaffirmed the requirements in *Salesin* and *Burns* that a party raising the issue of waiver has a heavy burden of proof, and must demonstrate that the opposing party had knowledge of the right to compel arbitration, performed acts inconsistent with that right, and was prejudiced by the inconsistent acts. This Court also explained that although these requirements are based on federal law, they also apply to arbitration proceedings under state law, stating:

> Defendant disputes the propriety of requiring a showing of prejudice to establish a waiver of arbitration. Defendant correctly asserts that unlike this case, *Burns*, *supra* at 580-582, involved the federal arbitration act. In light of the reference to Michigan law in the instant agreement and its provision for enforcement of the arbitrator's decision in the Oakland Circuit Court, this case involves Michigan statutory arbitration. MCL 600.5001; MCR 3.602; *Hetrick v David A Friedman, DPMO, PC*, 237 Mich App 264, 268; 602 NW2d 603 (1999). Defendant ignores, however, that *Salesin* did not involve federal arbitration, but nonetheless incorporated into its waiver analysis the federal prejudice requirement. To the extent that defendant challenges the soundness of the *Salesin* panel's reference to the prejudice requirement, we note that we are bound by the *Salesin* decision, MCR 7.215(I)(1), and that defendant fails to cite any cases utilizing a different waiver analysis under the Michigan Arbitration Act, thus abandoning this subissue. *Mudge v Macomb Co*, 458 Mich 87, 104-105; 580 NW2d 845 (1998). [*Madison Dist Pub Sch*, 247 Mich App at 588 n 1.]

In this case, the trial court did not directly apply federal caselaw in its waiver analysis, but it relied on state cases that applied the federal standards, notably *Nexteer Auto Corp v Mando America Corp*, 314 Mich App 391, 397; 886 NW2d 906 (2016), in which this Court, quoting *Madison Dist Pub Sch*, 247 Mich App at 588, observed that "[t]he party arguing there has been a waiver of this right bears a heavy burden of proof and must demonstrate knowledge of an existing right to compel arbitration, acts inconsistent with the right to arbitrate, and prejudice resulting from the inconsistent acts." Accordingly, we reject plaintiff's argument that the trial court did not apply the correct standard for determining whether there was a waiver of the right to arbitration.

Applying the appropriate standards to the facts of this case, the trial court did not err by holding that defendant did not waive its right to enforce the arbitration clause. Plaintiff did not meet his heavy burden of proving a waiver. There is no dispute that defendant was aware of its right to compel arbitration of some of plaintiff's claims because it included this defense in its answer. Plaintiff principally argues that defendant's actions in this litigation were inconsistent with the right to arbitrate plaintiff's claims. We disagree.

In *Madison Dist Pub Sch*, 247 Mich App at 589, this Court discussed the type of conduct that can waive a right to arbitrate:

> In most jurisdictions, the right to arbitration may be waived by certain conduct, with each case decided on the basis of its particular facts and circumstances:

"Various forms of participation by a [party] in an action have been considered by the courts in determining whether there has been a waiver of the [party]'s right to compel arbitration or to rely on arbitration as a defense to the action. It has been generally held or recognized that by such conduct as defending the action or proceeding with the trial, a [party] waives the right to arbitration of the dispute involved. A waiver of the right to arbitrration [sic] . . . has also been found from particular acts of participation by a [party], each act being considered independently as constituting a waiver. Thus, a [party] has been held to have waived the right to arbitration of the dispute involved by filing an answer without properly demanding or asserting the right to arbitration, by filing an answer containing a counterclaim . . . without demanding arbitration or by filing a counterclaim which was considered inconsistent with a previous demand for arbitration, by filing a third-party complaint or cross-claim, or by taking various other steps, including filing a notice of readiness for trial, filing a motion for summary judgment, or utilizing judicial discovery procedures." [*Hendrickson* (*v Moghissi*, 158 Mich App 290; 404 NW2d 728 (1987)), *supra* at 299-300, quoting anno.: *Defendant's participation in action as waiver of right to arbitration of dispute involved therein*, 98 ALR3d 767, § 2, pp 771-772.]

See also *Salesin*, *supra* (noting that defending an action without seeking to invoke a right to compel arbitration constitutes a waiver of the right to arbitration); *North West Michigan Constr* [, *Inc v Stroud*, 185 Mich App 649; 462 NW2d 804 (1990)], *supra* at 651-652, quoting *Henderson* [sic] [*Hendrickson*], *supra* at 300. A party does not waive the right to arbitrate, however, by litigating an issue that is not arbitrable. *Auto Club Ins Ass'n v Lozanis*, 215 Mich App 415, 421-422; 546 NW2d 648 (1996), overruled in part on other grounds in *Perry v Sied*, 461 Mich 680, 690; 611 NW2d 516 (2000).

In this case, it is clear that defendant asserted its right to rely on the arbitration clause in its answer. Defendant thereafter participated in discovery, but it is undisputed that one of plaintiff's claims was not subject to arbitration. Defendant also sought to compel arbitration in an appropriate motion under MCR 2.116(C)(7). Further, it was plaintiff who moved to adjourn the hearing on defendant's motion so that he would have additional time to conduct further discovery. While plaintiff argues that defendant's procedural actions of relying on plaintiff's jury demand, moving venue to another county, and filing a witness list are all inconsistent with the right to arbitrate, those actions were still necessary to the litigation of the MMWA claim, which was not subject to

arbitration. Plaintiff also points to defendant's participation in discovery as a reason to find that it waived its right to arbitration, but that argument is not persuasive considering that discovery still would have been necessary for plaintiff's MMWA claim which was not subject to arbitration, and that some discovery related to the claims subject to arbitration likely would have been necessary if the matter was bifurcated into separate proceedings earlier. As defendant notes on appeal, its decision to not bifurcate the matter into separate proceedings earlier was the most economical use of the parties' time and resources. On these facts, particularly that defendant needed to participate in discovery on at least one of plaintiff's claims that was expressly excluded from arbitration, we cannot conclude that defendant intentionally relinquished its right to arbitration by participating in discovery.

The trial court also ruled that plaintiff's waiver argument failed because he did not address whether he was prejudiced. On appeal, plaintiff argues that he is no longer required to show prejudice to establish that defendant waived its right to arbitration in light of the recent United States Supreme Court decision in *Morgan v Sundance, Inc*, 596 US ___; ___ S Ct ___; ___ L Ed 2d ___ (2022). Assuming that plaintiff is correct that he did not need to show prejudice in light of *Morgan*, the trial court nevertheless did not err by ruling that plaintiff failed to meet his heavy burden of proving that defendant waived its right to enforce the arbitration clause for the reasons previously discussed.

## B. VOID *AB INITIO*

Alternatively, plaintiff argues that arbitration is not available because the parties' purchase agreement that contains the arbitration clause is void *ab initio* because it violates state law. The trial court determined that the validity of the parties' purchase agreement was a matter for the arbitrator to decide. We agree.

Specifically, plaintiff argues that the entire agreement, including the arbitration provision, is void *ab initio* because the vehicle purchase agreement violated the motor vehicle code, MCL 257.1 *et seq*., by inaccurately describing the vehicle as both a "new" and "demonstrator" vehicle, when it was actually a used vehicle.

MCL 257.33a defines a "new motor vehicle" as "a motor vehicle which is not and has not been a demonstrator, executive or manufacturer's vehicle, leased vehicle, or a used or secondhand vehicle." MCL 257.11a defines a "demonstrator" as "a motor vehicle used by a prospective customer or a motor vehicle dealer or his agent for testing and demonstration purposes." It is undisputed that the subject vehicle was a used vehicle, and that the parties' purchase agreement wrongly listed the vehicle as both a "new motor vehicle" and a "demonstrator." Plaintiff argued that the inaccurate listing violated MCL 257.248a(1), which provides:

> A motor vehicle dealer shall not advertise or represent a motor vehicle to be a demonstrator, executive or manufacturer's vehicle, leased vehicle, new motor vehicle, or used or secondhand vehicle unless the vehicle so described is as defined in this act.

-11-

Plaintiff's complaint also alleged that defendant made other false statements that induced him to purchase the vehicle and included a claim for fraud in the inducement. This claim challenged the validity of the sales agreement as a whole, not just the arbitration clause.

Relying on *Buckeye Check Cashing, Inc v Cardegna*, 546 US 440, 444-445; 126 S Ct 1204, 1208; 163 L Ed 2d 1038 (2006), and *Scanlon v P & J Enterprises, Inc*, 182 Mich App 347, 350-351; 451 NW2d 616 (1990), the trial court ruled that the validity of the purchase agreement was for the arbitrator to decide.

Under Michigan law, it is generally for the court, not an arbitrator, to determine whether there is a contract to arbitrate and whether its terms are enforceable. See *Arrow Overall Supply Co v Peloquin Enterprises,* 414 Mich 95, 99; 323 NW2d 1 (1982); *Watts v Polaczyk,* 242 Mich App 600, 603; 619 NW2d 714 (2000). On this point, Michigan law conflicts with federal law. Under federal law, courts may address and adjudicate a challenge to the validity of an arbitration clause itself, but if a claim challenges the validity of a contract as a whole, then courts will enforce the arbitration agreement and refer the matter regarding the validity of the contract to the arbitrator. See *Buckeye Check Cashing,* 546 US at 444-445 (holding that a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause, must be decided by the arbitrator, not the court). Because this case is governed by the FAA, this Court must follow federal law regarding the arbitrability question. See *Rent-A-Center, W, Inc v Jackson,* 561 US 63, 70-72; 130 S Ct 2772; 177 L Ed 2d 403 (2010).

This case is factually similar to *Scanlon*, 182 Mich App 347, on which the trial court relied. In *Scanlon*, the plaintiffs challenged the validity of franchise contracts that contained arbitration clauses, but did not challenge the validity of the arbitration clauses themselves. *Id.* at 349. The arbitration clauses provided that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof," shall be submitted to arbitration. *Id*. at 350. This Court held that because the case was governed by the FAA, under federal substantive law "any issue arising with respect to the contract, including a claim of fraud in the inducement of the entire contract," was required to be submitted to arbitration. *Id.* This Court observed that "federal courts have uniformly held that even a claim of fraud in the inducement of an entire contract containing an arbitration clause is to be referred to arbitration under the federal arbitration act." *Id.* at 350-351.

Similarly, in this case, plaintiff is challenging the arbitration clause only as part of his claim that the entire purchase agreement is void *ab initio* due to fraud. Because the FAA governs, the trial court correctly held that plaintiff's challenge to the validity of the contract, including his claims of fraud in the inducement and that the agreement violated the motor vehicle code, are matters for the arbitrator to decide.

IV. PLAINTIFF'S MMWA CLAIM

Plaintiff next argues that the trial court erred by granting defendant's motion for summary disposition with respect to plaintiff's MMWA claim regarding express and implied warranties. We disagree.

Although defendant moved for summary disposition of the MMWA claim under both MCR 2.116(C)(8) and (C)(10), the motion is properly reviewed under MCR 2.116(C)(10) because (1)

the parties were allowed to wait until discovery was completed, (2) defendant relied on evidence beyond the pleadings in support of its motion, and (3) the trial court considered evidence outside the pleadings in deciding the motion. A motion under MCR 2.116(C)(10) tests the factual support for a claim. A court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine if a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden v Rozwood,* 461 Mich 109, 118-120; 597 NW2d 817 (1999). Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834 (1995).

## A. "AS IS" DISCLAIMER

The MMWA provides a cause of action for a consumer against a supplier or warrantor who breaches a written warranty, an implied warranty, or a service contract. Specifically, 15 USC 2310(d)(1) provides:

> [A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief.

To recover under the MMWA, plaintiff was required to establish: (1) that he was damaged by defendant's failure to comply with an obligation under the MMWA, (2) that he was damaged by defendant's failure to comply with an obligation under a written warranty; or (3) that he was damaged by defendant's failure to comply with an obligation under an implied warranty.

Plaintiff argues that he established a claim under the MMWA involving express warranties made by defendant, and that the "as is" disclaimer accompanying the sale could not void the express warranties under the MMWA. Plaintiff argues that an express warranty was created under state law, specifically MCL 440.2313 of the Uniform Commercial Code (UCC), which provides:

> (1) Express warranties by the seller are created as follows:
>
> (a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he or she have a specific

-13-

intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty, except as provided in the art multiples sales act and Act No. 121 of the Public Acts of 1970, being sections 442.321 to 442.325 of the Michigan Compiled Laws.

According to plaintiff, an express warranty was created when defendant's salesperson represented that the subject vehicle was "new" and a "demonstrator," and had been subject to a 72-point inspection to ensure that it was safe to drive. Plaintiff further claims that he was told by the salesperson that the vehicle had one prior owner, was a lease turn-in, and had not been involved in any accident.

The trial court rejected plaintiff's claim that an express warranty under the UCC could support a claim under the MMWA because the MMWA requires a *written* warranty, an implied warranty, or a service contract. Further, the information identifying the vehicle as "new" and a "demonstrator" did not create an express warranty reduced to writing because it was undisputed that plaintiff knew that he was purchasing a used vehicle.

The other representations about the vehicle passing a 72-point inspection, not having been involved in an accident, and having one owner arguably could create a warranty regarding the vehicle's safety and fitness for the road. Inspection reports provided near the time of purchase have been held to create a written warranty. See *Murphy v Mallard Coach Co*, 179 AD2d 187, 193-194; 582 NYS2d 528 (1992); *Marine Midland Bank, NA v Carroll*, 98 AD2d 516, 518-519; 471 NYS2d 409 (1984). An inspection report could constitute an affirmative statement of fact related to the condition of the vehicle at the time of purchase, making it a part of the bargain. Compare *Klanseck v Anderson Sales & Servs, Inc*, 136 Mich App 75, 86-87; 356 NW2d 275 (1984), aff'd 426 Mich 78 (1986); *Ducharme v A & S RV Center, Inc*, 321 F Supp 2d 843, 850 (ED Mich, 2004), aff'd 127 Fed Appx 204 (CA 6, 2005) (holding that checklists regarding vehicles did not represent the condition of the products, and therefore, did not create express warranties).

However, plaintiff did not produce evidence of a writing to support this theory. He relies only on verbal statements by the salesperson. Even if the salesperson's statements created express warranties, the absence of a writing prevents plaintiff from establishing an express warranty enforceable under the MMWA, 15 USC 2310(d)(1). Without a writing, plaintiff cannot show that any express warranty supports a claim under the MMWA.

Plaintiff further argues that defendant's disclaimers are ineffective because an express warranty was made. However, the purchase agreement states that there are no warranties, express or implied:

> 12. <u>USED VEHICLE—WHETHER OR NOT SUBJECT TO MANUFACTURER'S WARRANTY</u>
>
> UNLESS A SEPARATE WRITTEN DOCUMENT SHOWING THE TERMS OF ANY DEALER WARRANTY OR SERVICE CONTRACT IS FURNISHED BY THE DEALER TO THE PURCHASER, THIS VEHICLE IS SOLD "<u>AS IS</u>" WITHOUT ANY WARRANTY EITHER EXPRESS OR

IMPLIED. THE PURCHASER WILL BEAR THE ENTIRE EXPENSE OF REPAIR OR CORRECTING ANY DEFECTS THAT PRESENTLY EXIST OR THAT MAY OCCUR IN THE USED VEHICLE.

In addition, the Buyer's Guide for the vehicle indicates that the manufacturer's warranty still applied, but further states that "[t]he dealership itself assumes no responsibility for any repairs, regardless of any oral statement about the vehicle. All warranty coverage comes from the unexpired manufacturer's warranty."

Plaintiff argues that the disclaimer is ineffective under 15 USC 2308 because of the express warranties that were made to him. 15 USC 2308 provides, in relevant part:

(a) Restrictions on disclaimers or modifications

No supplier may disclaim or modify (except as provided in subsection (b)) any implied warranty to a consumer with respect to such consumer product if (1) such supplier makes any written warranty to the consumer with respect to such consumer product, or (2) at the time of sale, or within 90 days thereafter, such supplier enters into a service contract with the consumer which applies to such consumer product.

* * *

(c) Effectiveness of disclaimers, modifications, or limitations

A disclaimer, modification, or limitation made in violation of this section shall be ineffective for purposes of this chapter and State law.

To establish a violation of 15 USC 2308, plaintiff must present proof that defendant provided an express warranty *in writing* regarding the vehicle's condition. Because plaintiff did not produce any evidence of a written warranty that conflicts with defendant's disclaimer of any implied warranty, he cannot rely on 15 USC 2308 to argue that defendant's "as is" disclaimer is ineffective.

Plaintiff also argues that the trial court erroneously rejected his argument that defendant's offers to repair his vehicle at no cost amounted to a waiver of its disclaimer of any implied warranties of merchantability and fitness. While the trial court appears to have misunderstood plaintiff's argument—stating, "Although Plaintiff also argues that Defendant waived any disclaimer by performing repairs on the Vehicle, he has not offered any evidence that the repairs were made pursuant to an express or implied warranty"—the record does not support plaintiff's claim that defendant waived its disclaimer of implied warranties of merchantability and fitness.

Plaintiff relies on *Oregon Bank v Nautilus Crane & Equip Corp*, 68 Or App 131, 139-140; 683 P2d 95 (1984), to argue that a seller's course of performance may operate to waive a disclaimer and reinstate implied warranties of merchantability and fitness for a particular purpose. Indeed, MCL 440.2316(3)(c) recognizes that a disclaimer of an implied warranty may be negated by a course of performance.

In this case, after plaintiff purchased the vehicle, defendant agreed to balance the tires to address the vehicle's shaking. It also replaced the bumper and repaired the muffler after the bumper began to melt. However, when plaintiff complained that additional, more extensive repairs were necessary to fix the vehicle's frame and wiring, defendant declined to provide those repairs. Although defendant did provide some repairs that were inconsistent with disclaiming any liability for the vehicle's condition, defendant's attempts to placate plaintiff by making some gratuitous repairs shortly after the vehicle was purchased do not demonstrate a course of conduct that is inconsistent with the disclaimers included in the purchase agreement. "Waiver is the intentional relinquishment of a known right." *In re Gordon*, 323 Mich App 548, 562; 919 NW2d 77 (2018). Merely because defendant agreed to perform some repairs that it was not obligated to perform does not demonstrate that defendant intentionally waived its rights under the disclaimers.

## B. THE "USED CAR RULE"

Plaintiff also argues that the trial court erred by ruling that he failed to show that he has a valid claim under the "Used Car Rule" under the MMWA. We again disagree.

Pursuant to 15 USC 2309(b) of the MMWA, the Federal Trade Commission enacted regulations and rules dealing with warranties and warranty practices in connection with the sale of used motor vehicles. One such rule is the Used Motor Vehicle Trade Regulation Rule (the "Used Car Rule"), 16 CFR 455.1 *et seq*. A cause of action for violation of the Used Car Rule is authorized under 15 USC 2310(d)(1) of the MMWA, which allows a consumer to recover when he "is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract . . . ." 15 USC 2310(d)(1).

16 CFR 455.1 provides, in relevant part:

(a) It is a deceptive act or practice for any used vehicle dealer, when that dealer sells or offers for sale a used vehicle in or affecting commerce as commerce is defined in the Federal Trade Commission Act:

(1) To misrepresent the mechanical condition of a used vehicle;

(2) To misrepresent the terms of any warranty offered in connection with the sale of a used vehicle; and

(3) To represent that a used vehicle is sold with a warranty when the vehicle is sold without any warranty.

(b) It is an unfair act or practice for any used vehicle dealer, when that dealer sells or offers for sale a used vehicle in or affecting commerce as commerce is defined in the Federal Trade Commission Act:

(1) To fail to disclose, prior to sale, that a used vehicle is sold without any warranty; and

(2) To fail to make available, prior to sale, the terms of any written warranty offered in connection with the sale of a used vehicle.

(c) The Commission has adopted this Rule in order to prevent the unfair and deceptive acts or practices defined in paragraphs (a) and (b). It is a violation of this Rule for any used vehicle dealer to fail to comply with the requirements set forth in §§ 455.2 through 455.5 of this part. If a used vehicle dealer complies with the requirements of §§ 455.2 through 455.5 of this part, the dealer does not violate this Rule.

Plaintiff argues that he can establish a claim under 16 CFR 455.1(a)(1), which states that it is a deceptive practice for a dealer "[t]o misrepresent the mechanical condition of a used vehicle." Plaintiff asserts that defendant misrepresented the condition of his vehicle. However, the Used Car Rule does not include an inspection requirement and it does not require that sellers of used automobiles disclose known defects. See *Patton v McHone*, 822 SW2d 608, 614-615 n 5 (Tenn App, 1991). Moreover, nothing in 16 CFR 455.1(a)(1) establishes liability solely because a dealer may have verbally misrepresented the condition of a vehicle. Reading the rule as a whole, it is apparent that it applies only to warranties, consistent with the MMWA.

Plaintiff also asserts in his reply brief that defendant violated 16 CFR 455.1(a)(2) and (3) by wrongly representing, including in the Buyer's Guide, that the vehicle was still subject to the manufacturer's warranty. However, it does not appear that plaintiff raised this argument in the trial court in response to defendant's motion for summary disposition. This Court may decline to address an issue that is first raised on appeal. *Green v Ziegelman*, 282 Mich App 292, 300; 767 NW2d 660 (2009). Moreover, this argument is raised for the first time on appeal in plaintiff's reply brief. An appellant may not raise an issue for the first time in a reply brief. *Kinder Morgan Mich, LLC v City of Jackson*, 277 Mich App 159, 174; 744 NW2d 184 (2007); MCR 7.212(G) (reply briefs must be confined to rebuttal of the arguments in the appellee's brief). For these reasons, we decline to consider this issue. *Green v Ziegelman*, 282 Mich App 292, 300; 767 NW2d 660 (2009).[1]

---

[1] We agree with plaintiff that the trial court appears to have improperly resolved a disputed issue of fact regarding whether plaintiff was provided with a CARFAX report for the vehicle before purchasing it. In his deposition, plaintiff stated that he did not receive the CARFAX report until after he took the vehicle to Genesis Cadillac, which was after he purchased it from defendant. A court may not determine disputed issues of fact when deciding a motion for summary disposition. *Skinner v Square D Co,* 445 Mich 153, 161; 516 NW2d 475 (1994). However, because this disputed issue is not material to whether plaintiff can establish a claim under the Used Car Rule, this error is harmless. MCR 2.613(A).

Affirmed.

/s/ Thomas C. Cameron
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle