*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

RENU RIGHT, INC.,

        Plaintiff-Appellee,

v

MASOUD SHANGO,

        Defendant-Appellant,

and

CLIO SHOPPING CENTER, LLS,

        Defendant.

UNPUBLISHED
March 23, 2023

No. 359976
Genesee Circuit Court
LC No. 18-111519-CB

Before: PATEL, P.J., and SWARTZLE and HOOD, JJ.

PER CURIAM.

In this breach of contract action arising out of water damage at a commercial property, defendant, Masoud Shango, appeals as of right the amended judgment in favor of plaintiff Renu Right, Inc., an assumed name for Gebrael Properties, Inc., in the amount of $89,823.20 plus $43,436.11 in attorneys' fees and costs that was entered following a jury verdict in favor of Renu Right. We affirm.

## I. FACTUAL BACKGROUND

Renu Right is a residential and commercial restoration company. In January 2018, Renu Right received an emergency call from a restaurant in Clio, Michigan. The caller reported a large amount of water inside of the restaurant. Tony Gabrael, the owner of Renu Right, assessed the property and determined that the water was coming from the theater next door. Water was flowing out of the front door of the theater, onto the sidewalk, and into the parking lot. Gabrael gained access to the theater but was unable determine the source of the water, so he contacted the township to shut the water off. There was no power or heat in the building. It was ultimately determined that the cold temperatures had caused a fire suppression line to break in several spots.

After assessing the theater, Gabrael contacted Shango, who owns the Clio Shopping Center. Gabrael explained the urgency of removing the water from the vacant cinema due to the risk of further damage. Shango told Gabrael that he wanted to hire Renu Right to mitigate the water damage in the cinema. On January 12, 2018, Shango executed a "Work Authorization and Agreement" that authorized Renu Right to perform water restoration and remediation services at the cinema "using like kind and quality of labor and materials as outlined in the estimate . . . ." The agreement specified that Shango was "responsible for payments to Renu Right, per the estimate" and that "any deductible, depreciation and other items not paid for by [Shango's] insurance company if any, are payable by [Shango] the property owner." The agreement required a progress payment schedule to be included with the estimate for any job larger than $10,000, and Shango was responsible to make the progress payments as scheduled to avoid any impact on the construction schedule. The agreement included a provision for attorney's fees: "Should legal action be required to collect an outstanding balance under this Agreement of any Change Order, any attorney fees, collection agency fees, and court costs incurred from this action will be added to the outstanding balance that I will pay."

The agreement also included an arbitration provision:

ARBITRATION OF DISPUTES: Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by an arbitrator selected by Contractor under construction industry arbitration rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. NOTICE: BY INITIALING THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTER INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY MICHIGAN LAW AND YOU ARE GIVING UP ANY RIGHT YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACES BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THE PROVISION, YOU MAY BE COMPELLING TO ARBITRATE UNDER THE AUTHORITY OF THE BUSINESS AND PROFESSIONAL CODE OR OTHER APPLICABLE LAWS. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY. WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

Shango initialed, signed, and dated the spaces immediately after the arbitration provision, and signed the agreement. Shango claimed he did not read the agreement before signing it.

On the same date, Shango signed a supplement to the agreement that stated he was hiring Renu Right to "do remediation and [r]estoration," that he "will be responsible for all costs associated with the remediation and restoration" not covered by the insurance company, and that he authorized Gebrael "to have the power turned on at the Cinema" and "to meet with [C]onsumers

-2-

[Energy] to have the power turned on or transferred into [Shango's] name." Shango admitted at trial that he hired Gabrael, gave him the key to the cinema, told "him do whatever he want to do and get the water out[,]" and told him to "do the work as fast as [he] could." But he maintained that he did not read the agreement or the supplement, and claimed that he "made a mistake."

Because there was no heat in the building, and heat was necessary to dry the building out, Gabrael told Shango that electrical and HVAC repairs were necessary. On January 17, 2018, Gabrael met with Shango, at which time Shango signed a handwritten supplement to the agreement that stated he was "hiring Renu Right to perform [e]lectrical and HVAC work" at the cinema. The supplement indicated that there were two furnaces and mother boards missing, which would cost $950-$1,000 to replace, plus inspection fees and electrical costs.

Gabrael testified at trial that this was a big project. The cinema contained four separate theaters. The water in the theaters was so deep that it was above Gabrael's waders and the theater seats were completely submerged. Because there was no power in the building, Renu Right had to bring generators to run the pumps. It took approximately six pumps and a crew of three people to remove all of the water from the building. Once the water was removed, a crew of approximately 9 people worked on the demolition. A lot of equipment was required for the remediation process, including pumps, hundreds of feet of hose lines, generators, temporary lighting, carts, and numerous dumpsters. It took Renu Right approximately three to four weeks to get all of the water removed, complete the demolition, get the power turned back on, and resolve the heating issue. Renu Right submitted invoices totaling $89,823.20 for the water remediation services to Shango, but he refused to pay for any services.

Shango claimed that when he signed the second supplement, he told Gabrael that he did not have any insurance coverage for the loss. Gabrael allegedly told him not to worry. Shango denied that he promised to pay Renu Right regardless of whether he had insurance coverage. He claimed that Renu Right was supposed to "do the work free to pump the water outside free [sic]." It is undisputed that Shango did not go to the cinema to check on the water damage, did not observe the mitigation work as it was being performed, did not check on the building after Renu Right completed the work, did not look at photographs of the damage or work completed, did not review Renu Right's estimate, and did not pay Renu Right for the work performed.

In September 2018, Renu Right filed a four-count verified complaint for account stated, breach of contract, breach of implied contract, and quantum meruit-unjust enrichment. Renu Right sought a judgment in the amount of $89,823.20, which it supported with complete copies of the agreement, the two supplements, invoices, and an affidavit of account stated executed by Gebrael. Shango filed an answer and affirmative defenses denying the allegations and denying liability. It is undisputed that he did not assert a right to arbitrate.

In March 2019, Renu Right filed a first amended complaint, adding Clio Shopping Center, LLC as a party defendant. Once again, Renu Right sought a judgment in the amount of $89,823.20, which it supported with copies of the agreement, the two supplements, invoices, and an affidavit of account stated executed by Gebrael. But the copy of the attached agreement was missing the second page that contained the attorney's fee provision and the arbitration clause. Shango filed an answer and affirmative defenses denying the allegations and denying liability. It is undisputed that he did not assert a right to arbitrate.

After the parties engaged in extensive discovery, Shango filed a motion to dismiss pursuant to MCR 2.116(C)(7), arguing that the arbitration clause required binding statutory arbitration. Shango claimed that he was not made aware of the arbitration clause until his July 2019 deposition. In response, Renu Right argued that Shango was a competent adult, and was presumed to have read and understood the terms of the agreement when he signed it in multiple places. And he received a full copy of the executed agreement on several occasions. Renu Right asserted that Shango waived his contractual right to arbitrate by participating in litigation, and maintained that it would be unfairly prejudiced if arbitration was compelled.

The court denied Shango's motion for summary disposition, without oral argument, concluding in pertinent part as follows:

> Considering the specifics of this case, the facts balance more towards arbitration waiver. The defendant, Mr. Shango, took measures that waived the right to arbitration. He has filed an answer twice and has not asserted the right to arbitration in either. He has used discovery mechanisms to obtain evidence. He has moved to change the venue and to compel discovery. He was deposed. At the time of this order, Mr. Shango will have been litigating the case for nearly a whole year. This claim is untimely and should be considered waived.

Subsequently, Renu Right filed a motion for partial summary disposition pursuant to MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that Shango entered into a valid contract with Renu Right. The court concluded that there was a valid contract, but refrained from determining the scope of the remediation and restoration services agreed upon, whether any of the parties breached the contract, or whether Renu Right was entitled to damages.

Prior to the commencement of the jury trial, the parties stipulated to the entry of an order dismissing Clio Shopping Center and all of the counts of the complaint with the exception of the breach of contract claim. The matter was tried before a jury. At the close of Renu Right's proofs at trial, Shango's attorney moved for a directed verdict, which the trial court denied. Following a three-day trial, the jury returned a verdict in favor of Renu Right and awarded $89,823.20 in damages. Specifically, the jury found that (1) Renu Right proved that it substantially performed its obligation under the contract, including any condition precedent and (2) Renu Right proved that Shango breached the contract by failing to perform his obligations under the contract.

Shango filed post-verdict motions for new trial and/or to amend the judgment and for judgment notwithstanding the verdict (JNOV), which the court denied. The court granted Renu Right's motion for attorney's fees and costs pursuant to the terms of the parties' agreement, and awarded Renu Right $43,436.11. An amended judgment was entered, and this appeal followed.

## II. ARBITRATION

First, Shango argues that he did not have any knowledge of his right to arbitration and thus the court erred in concluding that he waived his right to arbitration.[1]  We disagree.

## A.  STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).  Shango moved for summary disposition under MCR 2.116(C)(7), which provides that summary disposition may be granted where "dismissal . . . is appropriate because of . . . an agreement to arbitrate or to litigate in a different forum[.]"  We consider all documentary evidence in a light most favorable to the nonmoving party under MCR 2.116(C)(7).  *Moraccini v City of Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012).  "If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide." *Id*.  (quotation marks omitted).  "But when a relevant factual dispute does exist, summary disposition is not appropriate."  *Id*.

The existence and enforceability of an arbitration agreement is a question of law that we review de novo.  *Michelson v Voison*, 254 Mich App 691, 693-694; 658 NW2d 188 (2003).  We also review "de novo the question of law whether the relevant circumstances establish a waiver of the right to arbitration, and . . . for clear error the trial court's factual determinations regarding the applicable circumstances."  *Madison Dist Pub Sch v Myers*, 247 Mich App 583, 588; 637 NW2d 526 (2001).  "A finding is clearly erroneous if, after a review of the entire record, the reviewing court is left with a definite and firm conviction that a mistake has been made."  *McNamara v Horner*, 249 Mich App 177, 182-183; 642 NW2d 385 (2002).  Finally, we review de novo, as a

---

[1] Renu Right argues that MCL 691.1708(1)(a) provides an appeal of right from an order denying a motion to compel arbitration and thus Shango was *required* to appeal the trial court's denial of his motion for summary disposition within 21 days of the entry of the court's order.  We disagree.  MCL 691.1708(1)(a) states that "[a]n appeal *may* be taken . . . from [a]n order denying a motion to compel arbitration."  (emphasis added).  MCL 691.1708(2) states that "[a]n appeal under this section shall be taken as from an order or a judgment in a civil action."  The Michigan Court Rules define "final judgment" as "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order."  MCR 7.202(6)(a)(*i*).  An order denying a motion dismiss based on a contractual right to arbitration is not a final judgment because it does not dispose of all of the rights and liabilities of the parties.  A party that files and loses a motion to dismiss is not prevented from filing an appeal as of right from subsequent orders that constitute final judgments.  Shango appealed as of right from the amended judgment, which was a "final judgment" as defined by MCR 7.202(6)(a)(*i*).  Generally, a party appealing a final order in a case can raise issues relating to prior nonfinal orders in that same case.  See *Green v Ziegelman*, 282 Mich App 292, 301 n 6, 767 NW2d 660 (2009) ("[A] party claiming an appeal of right from a final order is free to raise issues on appeal related to prior orders.") (cleaned up).  Shango did not waive his appeal of the court's nonfinal order denying his motion to dismiss.

question of law, the proper interpretation of a contract. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016).

## B. DISCUSSION

"Waiver of a contractual right to arbitrate is disfavored." *Madison*, 247 Mich App at 588. "The party arguing there has been a waiver of this right bears a heavy burden of proof and must demonstrate knowledge of an existing right to compel arbitration, acts inconsistent with the right to arbitrate, and prejudice resulting from the inconsistent acts." *Id.* (cleaned up). In this case, it is undisputed that the agreement contains an arbitration provision. It is further undisputed that Shango signed the agreement, and initialed the arbitration provision. But Shango claims that he did not read the agreement and thus could not have waived his right to arbitration because he allegedly had no knowledge of the arbitration clause. "One who signs a contract cannot seek to avoid it on the basis that he did not read it or that he supposed that it was different in its terms." *Nieves v Bell Indus, Inc*, 204 Mich App 459, 463; 517 NW2d 235 (1994). Regardless of whether Shango read the contract, he indisputably had notice of the contractual arbitration provision when he signed the agreement and initialed the arbitration provision. Shango's argument that the first amended complaint was missing a page of the agreement is also unpersuasive. A full copy of the contract, including the arbitration provision, was appended to the initial complaint served on Shango. Renu Right has demonstrated that Shango had knowledge of the right to arbitration.

Shango also acted inconsistent with the right to arbitration. He filed an answer to the complaint and did not demand or assert the right to arbitration in his affirmative defenses. He then proceeded to defend the case on the merits and engaged in discovery for several months before filing his motion to dismiss pursuant to MCR 2.116(C)(7). In general, a party that answers a complaint, defends an action, and engages in discovery without demanding or invoking the right to arbitration has waived the right to arbitration of the dispute. See *Madison*, 247 Mich App at 596-597. Renu Right was also prejudiced by Shango's inconsistent acts because it expended time and resources pursuing its claim in circuit court for months before Shango asserted his delayed demand for arbitration. See *Madison*, 247 Mich App at 599-600. Viewing the facts in the light most favorable to Renu Right, we find that the court did not err in concluding that Shango waived his right to arbitration. See *id.* at 596-597.

## III. DIRECTED VERDICT

Shango next argues that the court erred in denying his motion for directed verdict because there was no factual dispute that Renu Right did not perform reconstruction, which was a first substantial breach and Shango was not liable for breach of contract. We disagree.

## A. STANDARD OF REVIEW

We review a trial court's ruling on a motion for a directed verdict de novo. *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 201; 755 NW2d 686 (2008). We examine all of the evidence presented and legitimate inferences that may be drawn therefrom in the light most favorable to the nonmoving party to determine whether there was a question for the factfinder. *Id.* at 201-202. And we review de novo, as a question of law, the proper interpretation of a contract. *Innovation Ventures*, 499 Mich at 507.

## B. DISCUSSION

A motion for a directed verdict challenges the sufficiency of the evidence. *Nahshal v Fremont Ins Co*, 324 Mich App 696, 719; 922 NW2d 662 (2018). "A party is entitled to a directed verdict if the evidence, when viewed in the light most favorable to the nonmoving party, fails to establish a claim as a matter of law[,]" *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 345; 871 NW2d 136 (2015), and there is no material factual question upon which reasonable minds could differ, *Moore*, 279 Mich App at 202 (cleaned up). It is the factfinder's responsibility to determine the weight and credibility of the trial testimony, and the court may not substitute its judgment for that of the jury when the evidence could lead reasonable jurors to disagree. *Moore*, 279 Mich App at 202.

A party claiming breach of contract must prove by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) damages resulted to the party claiming a breach. *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).

> Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement. When interpreting a contract, our primary obligation is to give effect to the parties' intention at the time they entered into the contract. To do so, we examine the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written. [*Id.* (cleaned up).]

Shango moved for a directed verdict arguing that there was no factual dispute that Renu Right did not perform reconstruction, which was a first substantial breach and Shango was not liable for breach of contract. A party who first breaches a contract cannot maintain an action against the other party for his or her subsequent breach or failure to perform. *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994). But this rule is only applicable if the initial breach is substantial. *Id.* Whether a substantial breach occurred depends on "whether the nonbreaching party obtained the benefit which he or she reasonably expected to receive." *Able Demolition, Inc v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007). Alternatively, a substantial breach is one that "effect[s] such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964) (cleaned up). A condition precedent is a fact or event that the parties intended must have occurred before there is a right to performance. *Able Demolition*, 275 Mich App at 583. The failure to satisfy a condition precedent prevents that party from bringing a cause of action on the basis of the other party's failure to perform. *Id.*

In this case, Shango admitted that he hired Gabrael, gave him the key to the cinema, told "him do whatever he want to do and get the water out[,]" and told him to "do the work as fast as [he] could." Gabrael admitted that Renu Right was supposed to rebuild the theater pursuant to the agreement, but maintained that Renu Right was not afforded the opportunity to do so because Shango refused to respond his calls and emails, and did not pay for the mitigation work Renu Right

performed. Gabrael asked Shango how he wanted to move forward with repairing the theater, but Shango failed to respond. Gabrael explained, "We just can't repair something the way we want to do it." Gabrael testified that it was industry standard that payment for the water mitigation would occur before the restoration portion would begin. Gabrael clarified that Renu Right provided some restoration services at the theater—it performed electrical and HVAC restoration. Shango did not dispute that he failed to return Gabrael's calls. Nor did he dispute that he did not pay Renu Right. In fact, Shango claimed that Renu Right was supposed to "do the work free to pump the water outside free [sic]."

There was not a provision in the agreement specifying that payment for the mitigation work was a condition precedent to the restoration work. But there also was not a timeline in the agreement as to when the theater would be rebuilt. Reasonable minds could differ whether Renu Right substantially breached the agreement when it refused to rebuild the theater after Shango failed to pay for the mitigation work performed and refused to communicate with Gabrael. As explained in *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 555; 904 NW2d 192 (2017):

> Under the doctrine of anticipatory repudiation, if, before the time of performance, a party to a contract unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance. In determining whether an anticipatory breach has occurred, it is the party's intention manifested by acts and words that is controlling, and not any secret intention that may be held. [Cleaned up.]

Viewing the evidence in the light most favorable to Renu Right as the nonmoving party, we find that the court did not err in denying Shango's motion for directed verdict because reasonable minds could differ with whether there was a condition precedent and, if so, whether that condition precedent was satisfied.

## IV. JNOV, NEW TRIAL AND/OR AMENDED JUDGMENT

### A. STANDARD OF REVIEW

We review a trial court's decision regarding motions for JNOV de novo. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016). When considering a motion for JNOV, "[t]he appellate court is to review the evidence and all legitimate inferences in the light most favorable to the nonmoving party." *Id*. (cleaned up). "Only if the evidence so viewed fails to establish a claim as a matter of law, should the motion be granted." *Id*. (clean up).

We review a trial court's decision to grant or deny a motion for new trial for an abuse of discretion. *Guerrero v Smith,* 280 Mich App 647, 666; 761 NW2d 723 (2008). A court abuses its discretion when its decision falls "outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). We give substantial deference to a court's determination that a verdict was not against the great weight of the evidence. *Guerrero,* 280 Mich App at 666.

## B. GREAT WEIGHT OF THE EVIDENCE

Shango asserts that Renu Right breached the contract by failing to perform restoration, failing to provide a written estimate before starting the mitigation, and failing to incorporate a progress payment schedule; he thus argues that the jury verdict should be overturned. We disagree.

A new trial may be granted where "[a] verdict or decision [is] against the great weight of the evidence or contrary to law." MCR 2.611(A)(1)(e). "[T]he trial court's function is to determine whether the overwhelming weight of the evidence favors the losing party." *Guerrero*, 280 Mich App at 666. "A new trial may not be granted if an interpretation of the evidence logically explains the jury's findings." *Kelly v Builders Square, Inc*, 465 Mich 29, 41; 632 NW2d 912 (2001). It is the jury's role to assess witness credibility and determine how much weight should be given to testimony. *Dawe v Bar–Levav & Assoc (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010). A motion for JNOV should only be granted if viewing the evidence and all legitimate inferences in a light most favorable to the nonmoving party fails to establish a claim as a matter of law. *Hecht*, 499 Mich at 604. "[I]f reasonable jurors could have honestly reached different conclusions, the jury verdict must stand." *Id*. at 605-606 (cleaned up).

As discussed in Issues III, *supra*, reasonable minds could differ whether Renu Right substantially breached the agreement when it refused to rebuild the theater after Shango failed to pay for the mitigation work performed and refused to communicate with Gabrael. And while Gabrael conceded that an estimate was not provided prior the mitigation work beginning or incorporated into the agreement , he testified that, pursuant to industry standards, estimates are not provided for mitigation work. Shango's expert also testified that that it is not industry standard to prepare a mitigation estimate before beginning the mitigation work; rather the estimate is not prepared until *after* the water mitigation is concluded. It was the jury's role to assesses the credibility of the witness and determine how much weight to give to the testimony. See *Dawe*, 289 Mich App at 401. We find that the trial court did not err in denying Shango's motion for JNOV or abuse its discretion in denying his motion for a new trial.

## C. EXCESSIVE VERDICT

Shango argues that the jury's award of $89,230.20 was excessive and against the great weight of the evidence. He asserts that the award was so excessive that it must have been influenced by passion and prejudice. We disagree.

A new trial may be granted when a verdict was "clearly or grossly . . . excessive." MCR 2.611(A)(1)(d). Significant deference is given to a jury's ascertainment of damages. *Taylor v Mobley*, 279 Mich App 309, 311, 760 NW2d 234 (2008). "The trial court, having witnessed all the testimony and evidence as well as having had the unique opportunity to evaluate the jury's reaction to the proofs and to the individual witnesses, is in the best position to make an informed decision regarding the excessiveness of the verdict." *Palenkas v Beaumont Hosp*, 432 Mich 527, 531; 443 NW2d 354 (1989). This Court must refrain from invading the jury's fact-finding and substituting its own judgment when reasonable minds could differ regarding the level of certainty that damages have been proved. *Severn v Sperry Corp*, 212 Mich App 406, 415-416; 538 NW2d 50 (1995).

In this case, there was conflicting evidence and testimony regarding damages. While Shango's expert, Mark Camaj, criticized Renu Right's estimate and its work, he conceded that he did not know the condition of the building before the flood, did not know when the water damage began, did not know how much water entered the cinema, did not know how long water sat in the building or how far it wicked up the drywall, could not calculate a flow rate, and did not know the distance that the water had to be pumped. Camaj did not inspect the property until 2020, more than two years after Renu Right completed the water remediation. Both Gabrael and Renu Right's expert, Eric Chesser, refuted Camaj's claims of poor workmanship and his criticisms of Renu Right's estimate.

Gabrael testified that the estimate did not include all of the work that was done, and maintained that it was actually underbilled. He testified that there were 20 or more items left off of the estimate, and that the actual total could be 20% higher. While Chesser acknowledged that there were a few items that should not have been included in the estimate, he also testified that there were other things that could have been added. He stated that this was not unusual and the estimate would have generally been cleared up on the final walk-through. Camaj also recognized that the estimate was not a final bill, and conceded that it would have likely been adjusted either up or down upon a walk-through.

Indeed, both Gabrael and Chesser acknowledged that overhead and profit should not have been charged for some of the water mitigation line items (e.g., extraction and removal of building materials), but they testified that it was appropriately charged for the restoration of power and the HVAC system. Chesser criticized Camaj's reduced estimate at speculative and inaccurate, and testified that Renu Right's estimate was not an exorbitant or unusually high number.

In light of the conflicting testimony regarding the work performed and the estimate, it was the jury's prerogative to assesses the credibility of the witness, determine how much weight to give to testimony, and ascertain damages. See *Dawe*, 289 Mich App at 401; *Taylor*, 279 Mich App at 311. Even if the jury concluded that the testimony warranted deducting the full amount of overhead and profit from the estimate, the jury's verdict is supported by the testimony. Both Gabrael and Chesser testified that the final bill would have been higher than the estimate. In fact, Gabrael testified that it could have been as much as 20% higher. The trial court's decision to deny Shango's motion for new trial did not fall outside the range of reasonable and principled outcomes.

D. ATTORNEY MISCONDUCT

Shango maintains that he was deprived of his right to a fair trial due to certain misconduct allegedly exhibited by Renu Right's attorney. We disagree.

A trial court may grant a new trial pursuant to MCR 2.611(A)(1)(b) if the prevailing party committed misconduct affecting the moving party's substantial rights. "An attorney's comments usually will not be cause for reversal unless they indicate a deliberate course of conduct aimed at preventing a fair and impartial trial." *Hunt v Freeman*, 217 Mich App 92, 95; 550 NW2d 817 (1996). "Reversal is required only where the prejudicial statements of an attorney reflect a studied purpose to inflame or prejudice a jury or deflect the jury's attention from the issues involved." *Id*. That is, an attorney may not seek "to divert the jurors' attention from the merits of the case and to inflame the passions of the jury." *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App

-10-

278, 292; 602 NW2d 854 (1999). But "[t]he 'no objection—no ruling—no error presented' rule requires counsel to seek to have error cured before the case is submitted to the jury," unless the conduct could not have been cured. *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 101–102; 330 NW2d 638 (1982).

In this case, Shango did not object to the conduct of Renu Right's counsel during trial, and did not move for a mistrial. Instead, he raised the issue for the first time after the jury had rendered its verdict in his motion for a new trial. If a party in a civil action has not preserved the issue through a timely request for a curative instruction, as in this case, the following standard applies:

> When reviewing an appeal asserting improper conduct of an attorney, the appellate court should first determine whether or not the claimed error was in fact error and, if so, whether it was harmless. If the claimed error was not harmless, the court must then ask if the error was properly preserved by objection and request for instruction or motion for mistrial. If the error is so preserved, then there is a right to appellate review; if not, the court must still make one further inquiry. It must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial. If the court cannot say that the result was not affected, then a new trial may be granted. [*Reetz*, 416 Mich at 102–103.]

Shango challenges remarks by Renu Right's counsel that Shango was a multi-millionaire with numerous commercial properties who allegedly took advantage of a "small business owner like Tony Gebrael, Renu Right, and play[ed] a game with him" and stated "[t]his is a case about using somebody." Shango also challenges comments made by Renu Right's counsel that Camaj and Pratt were "hired guns" and "bought and paid forward [sic]." But Shango did not object to these statements at the time they were made and thus the trial court was unable to issue an immediate instruction to alleviate any perceived prejudice. These isolated comments were not so severe or pervasive that a tailored instruction could not have cured them. Most improper remarks may be cured by an immediate instruction by the court. *Reetz*, 416 Mich at 106, 111. Reversal is not appropriate when a party fails to make a timely objection and any prejudice could have been resolved by a curative instruction. *Id*. at 105. Despite Shango's failure to object, the trial court instructed the jury that sympathy for either party should not influence its decision. We presume that juries follow their instructions. See *Mich Dep't of Transp v Haggerty Corridor Partners Ltd Partnership*, 473 Mich 124, 178–179; 700 NW2d 380 (2005). We find that Renu Right's counsel's isolated remarks were not inappropriate and do not warrant reversal.

## V. ATTORNEY'S FEES AND COSTS

Finally, Shango argues that the trial court erred by granting Renu Right's motion for attorney's fees and costs pursuant to the parties' agreement.[2] We disagree.

---

[2] Shango argues that Renu Right was required to request attorney's fees as damages during trial, as opposed to a post-judgment motion. Shango has waived appellate review of this issue. During

## A. STANDARD OF REVIEW

Resolution of the issues requires interpretation of the contract provisions, which is a question of laws that we review de novo. *Innovation Ventures*, 499 Mich at 507.[3]

## B. DISCUSSION

Ordinarily, a prevailing party cannot recover its attorneys' fees "unless authorized by a statute, court rule, or other recognized exception" such as a contract between the parties. *Great Lakes Shores, Inc v Bartley*, 311 Mich App 252, 255; 874 NW2d 416 (2015). A contractual provision that provides for attorneys' fees is judicially enforceable. *Id.* In this case, Renu Right sought its attorneys' fees pursuant to a provision in the contract that stated Shango would pay Renu Right it reasonable attorneys' fees and actual costs in the event of Shango's default on its payment obligations: "Should legal action be required to collect an outstanding balance under this Agreement of any Change Order, any attorney fees, collection agency fees, and court costs incurred from this action will be added to the outstanding balance that I will pay." There is a dispute whether there is a typographical error in this provision. Renu Right maintains that it should read "Agreement *or* Change Order." On the other hand, Shango contends that there is not an error and the provision only applies to collection of outstanding balances on change orders.

Resolution of this issue requires interpretation of the above contract language. "In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning." *Phillips*, 480 Mich at 24 (cleaned up). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Id.*

The court initially concluded that "the contractual provision requiring Mr. Shango to pay the plaintiff's reasonable attorney fees will be judicially enforced to the extent of any change order." But, upon further review of the facts, the court determined that the attorney's fee provision was not limited to attorney's fees and costs incurred in collecting the outstanding balance for the two change orders. Rather, the court found that Renu Right was entitled to costs and attorney's fees incurred "from the entire case by Plaintiff's attorney." It seems apparent that there is a typographical error in the agreement and the attorney's fee provision was intended to apply to fees and costs incurred in collecting an outstanding balance under the agreement *or* any change order.

---

deliberations, the jury asked what Renu Right's legal fees were. Renu Right's counsel asserted that was an issue for the court, not the jury. And Shango's counsel agreed. "A party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute." *Hoffenblum v Hoffenblum*, 308 Mich App. 102, 117; 863 NW2d 352 (2014).

[3] Shango only contests the authority for the award of attorney's fees. He does not dispute the amount awarded.

The provision also does not contain any language precluding an award of attorney's fees if full restoration was not completed. It states that Renu Right is entitled to its attorney's fees incurred in collecting *an* outstanding balance under the agreement. It is undisputed that Shango did not pay for the remediation, and the jury determined that Shango owed for the remediation work pursuant to the terms of the agreement. Accordingly, we find that the trial court did not err in awarding Renu Right its costs and attorney's fees incurred in collecting the outstanding balance owed under the agreement.

Affirmed.

/s/ Sima G. Patel
/s/ Brock A. Swartzle
/s/ Noah P. Hood